STATE OF CONNECTICUT *v.* FORDY W. SILVER

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, JS.

Argued October 8—decided November 7, 1952

*Joseph E. Klau* and *David M. Shea,* with whom, on

the brief, were *John M. Bailey* and *Alfred F. Wechsler,* for the appellant (defendant).

*Joseph V. Fay, Jr.,* assistant state's attorney, with whom, on the brief, was *Albert S. Bill,* state's attorney, for the appellee (state).

INGLIS, J. The defendant was informed against in five counts. The first charged carnal knowledge, on or about October 13, 1950, of a female under sixteen years of age. The second and third alleged indecent assault upon minors, and the fourth and fifth charged the doing of acts likely to impair the morals of children under the age of sixteen. In none of the counts were the victims named, nor were any specific dates set forth for the commission of the offenses except in the first count. All of the counts, however, complied with the rule relating to short form informations. Practice Book § 344. No bill of particulars was requested by the defendant. See Practice Book § 345. The jury found the defendant not guilty on the first count and guilty on the other four counts. He has appealed from the denial of his motion to set aside the verdict on the last four counts and also from the judgment. He claims errors in the denial of three motions, in various rulings on evidence and in the charge.

The evidence in the case centered around the testimony of two girls, the first of whom was ten and the second eleven years of age. The first girl testified to these facts: On her way to and from school she ordinarily passed an apartment house in Hartford in which, it appeared from other evidence, the defendant was employed as janitor. On several occasions prior to October 13, 1950, as she reached the apartment house on her way home from school

at noon, the defendant called her in and committed indecent assaults upon her. One of these assaults was committed in a vacant apartment, two in the cellar and several—she did not remember how many —in an apartment in which there were furniture and a bulldog. On some of these occasions the defendant gave her small sums of money. Her testimony as regards the assault in the vacant apartment was at first open to the interpretation that it had occurred at noon on October 13, but it later appeared that she did not intend to say that. As it was left, she was unable to fix the date of that or any of the other occasions. On cross-examination, she testified that she had not told her mother about the incidents because she was afraid of being punished and that on one occasion the defendant had "chased" her from the building because she was playing on the self-service elevator.

By way of corroboration of her story the state produced another young girl, who testified to this incident: Once, as she and the first girl were passing the apartment, the defendant rapped on the window of the entrance door with a coin and motioned the first girl to come over. In response to the witness' inquiry, the first girl said that "that was the man that was fooling with her in a naughty way." It also appeared that on October 13 the complaining witness had conducted police officers, without any coaching by them, to the vacant apartment, to the apartment occupied by the defendant himself, where they found a bulldog, and to the cellar of the apartment house. On the same day she had given the police a statement embodying essentially the same story as that to which she testified. A physician testified that he had examined the girl on October 13 and found that her hymen had been ruptured but,

except that it was not a recent rupture, he could not tell how long that condition had existed or by what it had been caused.

The second little girl testified that she lived in the apartment house where the defendant was the janitor and, in circumstantial detail, told how, on two different days in September, 1949, he took her to the cellar and committed indecent assaults upon her. She further stated that after the second occasion she had told her mother that the defendant had taken her to the cellar but not that he had assaulted her.

The defense consisted of a denial of guilt, evidence of good character, an alibi for October 13, 1950, and the suggestion of a motive for falsification on the part of the first complaining witness in that he had told her not to play in the building.

It is clear that if the jury could reasonably have believed the testimony of the two complaining witnesses the verdict must stand. The contention of the defendant is not only that the testimony could not reasonably be believed but also that the jury showed that they did not believe the first girl because they returned a verdict of not guilty on the count charging carnal knowledge. This latter contention is a non sequitur. There was, in connection with that charge, enough indefiniteness in the child's description of the defendant's exact acts so that the jury might well have felt a reasonable doubt that there had been penetration. That they gave the defendant the benefit of that doubt does not indicate that they disbelieved the girl's account of the various indecent assaults.

The defendant produced no testimony which would necessarily discredit the testimony of either of the girls. His alibi for October 13 was of no value

against the testimony of the first girl because, as it
finally developed, she had not intended to fix that
day as being one upon which an assault had been
committed. On all the evidence, we cannot say that
the jury could not reasonably have believed the
testimony of the complaining witnesses. Since the
jury apparently did believe it, they were warranted
in finding the defendant guilty both of indecent as-
sault on, and of conduct impairing the morals of,
each of the girls. It follows that the trial court acted
properly in denying the motion to set aside the
verdict.

Such claims of proof as are necessary to test the
assignments of error in the appeal from the judg-
ment will be stated in connection with the discus-
sion of those assignments.

Before the start of the trial the defendant moved
that the counts involving one minor be tried sepa-
rately from those involving the other. The court
denied the motion and that ruling has been assigned
as error. The basis of the defendant's contention
is that the refusal to grant separate trials resulted
in the jury's having before them, in their considera-
tion of one group of crimes, evidence that the de-
fendant was guilty of another group of crimes, and
that this was prejudicial to him.

Section 8770 of the General Statutes provides:
"Whenever two or more cases shall be pending at
the same time against the same party, in the same
court, for offenses of the same character, counts for
such offenses may be joined in one information un-
less the court shall order otherwise." This statute,
it is true, does not in terms relate to the trial of
separate crimes. It speaks only of the joinder of
counts in a single information. There can, however,
be no reason for joining various counts in one in-

formation except to permit the trial of all of those counts at a single trial. The intendment of the statute, therefore, is that charges of several offenses, if they are of the same character, shall be tried together unless, as the statute provides, the court shall order otherwise.

The matter of separate trials of distinct offenses charged against a single defendant was before us in *State* v. *Bradley,* 134 Conn. 102, 55 A.2d 114 (cert. denied, 333 U.S. 827, 68 S. Ct. 453, 92 L. Ed. 1112). We upheld the denial by the trial court of a motion for separate trials of charges of three distinct first degree murders. We said (p. 109) : "In *State* v. *Kemp,* 126 Conn. 60, 84, 9 A.2d 63, we stated that in view of the statute such a joinder in one indictment or information cannot be regarded as so prejudicial in itself as to make a trial improper . . . . The matter lies within the discretion of the trial court and the exercise of that discretion cannot be interfered with unless it has been manifestly abused." The discretion of a court to order separate trials should be exercised only when a joint trial will be substantially prejudicial to the rights of the defendant, and this means something more than that a joint trial will be less advantageous to the defendant. *State* v. *McCarthy,* 130 Conn. 101, 103, 31 A.2d 921; *State* v. *Castelli,* 92 Conn. 58, 63, 101 A. 476. The test is whether substantial injustice will result to the defendant if the charges are tried together. *State* v. *Klein,* 97 Conn. 321, 324, 116 A. 596.

Substantial injustice might result to a defendant where the evidence of one of the several crimes charged will show such brutality on his part that it is apt to arouse the passion of the jury against him to such an extent that they probably would not give fair consideration to the evidence relating to the

other charges. Such a situation, however, is rare, and it does not exist in the present case. It is, of course, true that ordinarily upon the trial of one criminal charge evidence of the commission of another offense is not admissible. This principle, however, does not necessarily require separate trials when several offenses are charged against the same defendant. The rule itself is not one of universal application. There are many exceptions to it. See *State* v. *Barnes,* 132 Conn. 370, 372, 44 A.2d 708; *State* v. *Simborski,* 120 Conn. 624, 630, 182 A. 221; *State* v. *Chapman,* 103 Conn. 453, 480, 130 A. 899; *State* v. *Gilligan,* 92 Conn. 526, 530, 103 A. 649. If the principle were applied to preclude the joint trial of several charges against the same defendant, the statute would be utterly meaningless. There never could be a joint trial and, therefore, there could be no reason for joining several counts in the same information.

The defendant relies upon *State* v. *Ferrone,* 96 Conn. 160, 113 A. 452. In that case (p. 171) we discussed the procedure to be followed in the trial of a defendant informed against as an habitual offender and concluded that the evidence of his former convictions should be withheld from the jury until after they had found him guilty on the principal charge. The question presented in that case was quite different from the one involved here. The trial of a case in two successive stages, as directed in the *Ferrone* case, causes far less expense and delay than do two separate trials. Moreover, evidence of the former convictions of a defendant is much more apt to prejudice the jury against him than is evidence which merely tends to prove him guilty of other crimes. The *Ferrone* case, therefore, does not control the question now before us.

In the present case there was nothing to indicate that a substantial injustice would be, or was, done the defendant by the joint trial of the various counts of the information. There was, therefore, no abuse of discretion in the denial of the motion for separate trials.

Just before the examination of the veniremen on voir dire, counsel for the defendant made a motion by which he challenged the entire panel. This motion so far as the record discloses was not reduced to writing, but the parties have treated it as a challenge to the array. It was grounded on the fact that some of the veniremen had been present in the courtroom earlier in the day when sentence was being imposed on another defendant charged with a sex offense. In that proceeding the state's attorney and the court had remarked upon the prevalence and the seriousness of sex offenses in which young children were the victims. The claim was made that those remarks would be highly prejudicial to the defendant. The challenge to the array was overruled and this is assigned as error.

With reference to this assignment of error, it is sufficient to say that a motion challenging the array was not the proper method of raising the objection. Such a motion is a challenge to the entire panel and will be allowed only on some ground affecting the validity of the whole panel and growing out of the proceedings in selecting and summoning the panel. *State* v. *Smith,* 138 Conn. 196, 202, 82 A.2d 816; *State* v. *Luria,* 100 Conn. 207, 209, 123 A. 378; *State* v. *Hogan,* 67 Conn. 581, 583, 35 A. 508. In *State* v. *Rocco,* 109 Conn. 571, 572, 145 A. 47, we held, for the reason stated, that it was proper to overrule a challenge to the array based on the fact that newspaper articles about the case had been read aloud

in the jury room. If, as a matter of fact, in the present case any of the prospective jurors had heard and had been prejudiced by what had been said in the courtroom, that could have been brought out on voir dire. Indeed, most of the prospective jurors were inquired of on the subject and no prejudice appeared. The challenge to the array was properly denied.

The defendant also moved that the state be required to elect between the counts charging indecent assault upon the two minors and those charging impairment of their morals. This motion was denied. The defendant's contention is that this was error because the offenses of indecent assault upon a minor and of impairing his morals by that assault are identical, and therefore a defendant may not be convicted of both. It is to be noted that in the present case the claims of proof were such that, as regards each child, the jury might have predicated a finding of guilty of indecent assault on one assault and a finding of guilty of impairing the morals of a minor on one or more other assaults. In such an event it could not possibly be concluded that the two crimes were identical.

Even if the case had been one in which the state was seeking a conviction of both crimes on a single indecent assault, there still would not have been an identity of the crimes which would have prevented a conviction on both. The law on this subject is succinctly stated in *State* v. *Andrews,* 108 Conn. 209, 142 A. 840. We said (p. 215): "It is also held, generally, that where the same act combines the necessary elements of two or more distinct offenses, the difference not being merely one of degree, prosecution for one will not bar prosecution for another, and where one act constitutes several crimes, there

may be a separate prosecution for each . . . and if the offenses are distinct in law it is immaterial how near they may be in fact." See also *State* v. *Corrolla,* 113 Conn. 103, 106, 154 A. 152; *State* v. *O'Brien,* 101 Conn. 499, 502, 126 A. 690. The offenses of indecent assault and impairing the morals of a minor are not differing degrees of the same crime. They are distinct in law. A person may be guilty of the crime of indecent assault if he has committed an assault of that nature on a person not a minor. A person may be guilty of impairing the morals of a minor without committing an indecent assault upon that minor. It follows that a conviction may be had for both offenses even though both crimes arose out of the same set of facts. The defendant's contention in this regard is unsound.

Various rulings on evidence are questioned by the defendant. One of these was the admission of the testimony of the witness Van Sickle upon cross-examination. That testimony was to the effect that a tenant of one of the apartments in the building in which the defendant was janitor had moved out suddenly after the defendant had become aware that the police were suspicious that the tenant was committing a series of crimes in the apartment. The inference intended to be drawn from this was that the defendant had warned the tenant. Even though the defendant had introduced the issue of his good character, as he had, the evidence in question ordinarily would not by reason thereof have been admissible. Generally speaking, it is not competent to rebut evidence of good character by proof of particular acts. 32 C. J. S. 69, § 436b. The situation in the present case, however, was peculiar. The witness on direct examination had testified that the defendant was of good character and had bolstered that state-

ment by testimony that the defendant had reported that the tenant in question was conducting herself improperly. Under these circumstances it was admissible for the state to rebut the inference to be drawn from that testimony by introducing evidence of the complete transaction.

The wife of the defendant was called as a witness on his behalf. After she had testified that on October 11, 1950, the defendant received a telephone call from his niece in Manchester, she was asked whether he had said anything to the witness with respect to his intention of going anywhere. Objection to this question was sustained. The obvious purpose of the question was to elicit an answer which would tend to prove an alibi for October 11. Inasmuch as the evidence produced by the state had not fixed October 11 as a day on which any crime had been committed, evidence of the defendant's whereabouts on that day was irrelevant and properly excluded.

The defendant has assigned error in eight other rulings on evidence. As to four of them, no exception was taken at the trial and we will not consider them. Practice Book § 155. Two other assignments are not pressed on appeal, and the other two are without merit.

There remains to be noted the assignment of error directed to the charge. In taking his exceptions to the charge, counsel for the defendant said: "[W]ith respect to the information I think it ought to be made clear to the jury to whom each of these counts refer." Instead of complying with this suggestion, the court, in connection with an additional charge on other matters, said in substance that although it was the intention of the state's attorney to charge in the first count carnal knowledge of the first complaining witness, the "other four counts are

not tied up with offenses against either of these young girls." From the context it appears that the jury would understand from this that it was for them to determine whether the defendant was guilty of two indecent assaults and if they did so find they were to report a verdict of guilty on the second and third counts, whether both assaults were on the same girl or there was one assault on each girl. Likewise, the jury would understand that if they found the defendant guilty of impairing the morals of only one child it would make no difference whether they reported a verdict of guilty on the fourth count or a verdict of guilty on the fifth count. In view of the fact that each of the last four counts of the information alleged the offense charged therein as having occurred on divers dates and did not allege the name of the victim, the instruction given was the only proper one. It would have been a usurpation of the jury's function for the court to undertake to allocate the evidence tending to prove the respective crimes to specific counts of the information. If the defendant, because of difficulty in preparing his defense or to protect himself from double jeopardy, found it necessary to safeguard his rights by demanding the application of the evidence in that way, he should have addressed a motion to the information for a bill of particulars. Practice Book § 345. Subject to this qualification, it is neither unusual nor improper to protect the reputation of an innocent complainant in cases of this character by using a fictitious name or no name at all. The instruction was correct.

There is no error.

In this opinion BROWN, C. J., JENNINGS and BALDWIN, Js., concurred.

O'SULLIVAN, J. (concurring). Although in accord with the result reached in the opinion, I am apprehensive of one ruling made by the trial court. This ruling, it seems to me, was erroneous and ought to be characterized as such, even though subsequent events disclosed that no harm was ultimately occasioned the defendant. The matter, however, is of more than academic interest, since my associates, instead of criticizing the ruling, have given approval to it.

The information is in five counts. The ruling affected the last four. It will be ample, however, to mention only the second and third, as a discussion of these two will serve to explain the court's error. The second count reads as follows: "And the said Attorney further accuses Fordy W. Silver of Hartford, Connecticut of Indecent Assault and charges that at the City of Hartford on divers dates, the said Fordy W. Silver did commit an indecent assault upon a minor, in violation of Section 8359 of the General Statutes, Revision of 1949." The charge set forth in the third count was couched in identical language.

The defendant was thus faced with two counts, neither of which gave him the slightest clue as to the identity of his victims. Whatever may have been the reason for his failure to do so, the defendant did not move, before trial, that the state be ordered to reveal through a bill of particulars the name of the complainant referred to in each count as "a minor." Such a motion would have conformed to orderly procedure. Practice Book § 345. The failure of an accused person to take that step, however, ought not necessarily to exhaust his right to urge subsequently, during trial, that the state specify, either orally or in writing, the name of the minor

referred to in each of several counts; and the court should honor that right whenever it becomes apparent, as was the situation here, that an accused is being inadvertently trapped by the withholding of the desired information. A criminal case is not a contest of wits between opposing counsel, nor is it a game of skill or chance. It is a proceeding, which should be marked by the highest standards of fairness, to determine whether an individual is or is not guilty of the crime of which he stands charged.

The situation which the defendant found himself in may be stated in this fashion: The complainants, as the evidence bore out, were two young girls, one named Patricia and the other, Amelia. The importance of whether the minor in count two, for example, was the former or the latter became of great moment as the trial progressed. If, looking ahead, the jury should report a verdict of guilty on that count, the defendant would be completely in the dark as to whether guilt had been based on evidence offered to prove an indecent assault on Patricia or one on Amelia; and his difficulty would be heightened if a verdict of not guilty should be returned on the third count. In such an event, he would be helpless to present the claim, however meritorious in fact it might be, that the verdict of guilty lacked support in the evidence. The position of the defendant may be understood by contemplating the possibility that the jury, on inadequate evidence as to Patricia, might nevertheless find him guilty as to her, and, at the same time, might find him not guilty as to Amelia, although a verdict of guilty to the charge involving the latter girl might reasonably be supported by the evidence. In other words, it was of vital importance to him to know to which girl each count was applicable.

Accordingly, before the matter was submitted to the jury, the defendant requested the court to order the state to identify the girl against whom the offense charged in each count was committed. The request was not only denied but the court advised the jury that, if the evidence warranted, they might use either count to report a verdict of guilty as to either girl. This, I believe, was contrary to all known precedents. It was clearly erroneous and might have led to an insolvable dilemma. Since, however, a verdict of guilty was returned on each count, the error proved harmless in the case at bar.