## STATE OF CONNECTICUT *v.* ROBERT SUGGS
### (13194)

Peters, C. J., Healey, Shea, Callahan, Glass, Covello and Hull, Js.

Argued November 1, 1988—decision released January 31, 1989

*Suzanne Zitser,* assistant public defender, with whom were *Joseph G. Bruckmann,* assistant public defender, and, on the brief, *Joette Katz,* public defender, and *Kent Drager,* assistant public defender, for the appellant (defendant).

*Judith Rossi,* deputy assistant state's attorney, with whom were *Steven M. Sellers,* assistant state's attorney, and, on the brief, *Roland Fasano,* assistant state's attorney, for the appellee (state).

GLASS, J. In a four count substitute information, the defendant, Robert Suggs, was charged with the crimes of kidnapping in the first degree; General Statutes § 53a-92 (a) (2) (A);[1] sexual assault in a cohabiting relationship; General Statutes § 53a-70b (b);[2] sexual assault in the first degree; General Statutes § 53a-70;[3] and

---

[1] General Statutes § 53a-92 (a) (2) (A) provides: "A person is guilty of kidnapping in the first degree when he abducts another person and when . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually."

[2] "[General Statutes] Sec. 53a-70b. SEXUAL ASSAULT IN SPOUSAL OR COHABITING RELATIONSHIP: CLASS B FELONY. (a) For the purposes of this section:

"(1) 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body; and

"(2) 'Use of force' means: (A) Use of a dangerous instrument; or (B) use of actual physical force or violence or superior physical strength against the victim.

"(b) No spouse or cohabitor shall compel the other spouse or cohabitor to engage in sexual intercourse by the use of force against such other spouse or cohabitor, or by the threat of the use of force against such other spouse or cohabitor which reasonably causes such other spouse or cohabitor to fear physical injury.

"(c) Any person who violates any provision of this section shall be guilty of a class B felony."

[3] "[General Statutes] Sec. 53a-70. SEXUAL ASSAULT IN THE FIRST DEGREE: CLASS B FELONY: ONE YEAR NOT SUSPENDABLE. (a) A person is guilty of sexual assault in the first degree when such person compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person.

"(b) Sexual assault in the first degree is a class B felony for which one year of the sentence imposed may not be suspended or reduced by the court."

attempted assault in the second degree. General Statutes §§ 53a-49 (a) (2) and 53a-60 (a) (1).[4] Following a jury trial, the defendant was found guilty on all counts except the sexual assault in the first degree count, and received a total effective sentence of seventeen years imprisonment. From this judgment the defendant appeals. We find no error.

The jury could reasonably have found the following facts. In late June or early July, 1986, the defendant and the victim, who had known each other for seven years, moved into the third floor apartment at 735 Dixwell Avenue in New Haven. The defendant's friends, Jimmy Pew and Linda Lamb, who also lived at that address, allowed the couple to use the apartment. The defendant had found the apartment for both himself and the victim after the victim had been asked to leave her parents' house. The couple moved a substantial amount of their clothing and personal property into the apartment. They considered the apartment their home, shared the same bed and had sexual relations.

On Saturday, July 19, 1986, the defendant and the victim became embroiled in a day-long dispute, during which the defendant on several occasions pushed and slapped the victim. Eventually, Pew interceded, and suggested to the defendant that he should leave the premises for a while until he had "cool[ed] off." The defendant left without removing any of his belongings, and did not return to the apartment for two days.

---

[4] General Statutes § 53a-49 (a) (2) provides: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

General Statutes § 53a-60 (a) (1) provides: "A person is guilty of assault in the second degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person."

On Monday, July 21, 1986, the victim left work with a male friend and returned to the apartment alone at about 10 p.m. She promptly left the apartment when Lamb told her that the defendant had been drinking and was coming up the stairs. When she returned one-half to one hour later, she opened the outside door of the house and saw the defendant in the hallway leaning on the steps leading to the apartment. According to the victim, the defendant pushed her out onto the outside steps and then dragged her to the property next door, a service station called Johnnie's Garage. At Johnnie's Garage, the defendant slapped her in the face several times and pushed her against a fence. The defendant then pulled her to the area behind Johnnie's Garage, an unused field in which lay an abandoned railroad track. There, the defendant told the victim that "this is where you are going to die." The defendant forcibly brought the victim to the area of an abandoned automobile, pushed her down on it, and said, "Before you die I'm going to be the last one to [have sexual relations with] you." The defendant then removed the victim's pants and underpants, sodomized her and attempted to have vaginal intercourse with her.

As the defendant restrained the victim against the abandoned automobile, a car pulled into the service station and shone its headlights on them. The victim fled toward the street and stopped a passing motorist. The motorist, who testified at trial, stated that the victim was completely naked and appeared to be physically injured. Within minutes, New Haven police and an ambulance arrived on the scene. The victim informed police that the defendant had assaulted her. Police apprehended the defendant in the area of Johnnie's Garage shortly thereafter and placed him under arrest. The victim was taken to Yale-New Haven Hospital, arriving at approximately 1 a.m., July 22. The attending physician at the hospital testified that the victim

appeared to have been beaten, had swelling of both eyes, a cut above one eye, swollen and bloody lips, scratches on her back and legs, and a traumatic injury to her vaginal area.

The defendant testified, however, that he did not threaten to kill the victim and that he did not sexually assault her. He testified that he had come to the apartment that night to repeat a prior request he had made to the victim that she move out. He claimed that she fled from him and that he chased her into the area behind the garage. He stated that he removed her clothing with the intent to embarrass and humiliate her in an attempt to get her to move out of the apartment.

On appeal, the defendant raises the following claims of error: (1) the trial court's denial of his motion to have the state elect to proceed under either General Statutes § 53a-70 or § 53a-70b violated his state and federal due process guarantees requiring the state to prove all the elements of a crime and providing the defendant the right to present a defense; (2) the trial court's instructions impermissibly led the jury to believe that it could not acquit the defendant of both sexual assault counts; (3) the trial court's instructions on the kidnapping count impermissibly included a statutory basis of liability for which there was no supporting evidence; and (4) the trial court's instructions on kidnapping failed to inform the jury that it must agree unanimously on which alternative basis of liability the state had proven. We find no error.

I

The defendant first claims that his due process rights under the United States and Connecticut constitutions were violated when the state tried him for the crimes of sexual assault in a cohabiting relationship and sexual assault in a noncohabiting relationship at the same time. The facts relating to this claim are as follows. On

August 5, 1986, the state filed an information charging the defendant with kidnapping in the first degree, sexual assault in a cohabiting relationship, and attempted assault in the second degree. Prior to trial, on February 4, 1987, the state filed a substitute information, adding the charge of sexual assault in the first degree. At a pretrial hearing on February 9, 1988, defense counsel requested the court to order the state to elect to prosecute the defendant either for sexual assault in the first degree under § 53a-70 or for sexual assault in a cohabiting relationship under § 53a-70b. The defendant contended that because cohabitation is an affirmative defense to the first degree sexual assault charge of § 53a-70; see General Statutes § 53a-67 (b);[5] the state, by charging the defendant with both the cohabiting and noncohabiting sexual assault crimes, placed the defendant in the position of raising an affirmative defense to one count which would assist the state in establishing an element of the other count. Defense counsel also informed the court that the defendant would testify at the trial. The trial court denied the motion, stating that the state should not have to elect between the counts because of a factual question whether the victim and the defendant were cohabitors at the time of the offense. The trial court stated, however, that the defendant could not be punished under both statutes, and that the court would submit the counts to the jury in the alternative. At the conclusion of the trial, the court denied the defendant's motion for a new trial, again rejecting his objection to being tried for both offenses.

Our consideration of the defendant's argument requires a brief discussion of the statutory scheme at

[5] General Statutes § 53a-67 (b) provides: "In any prosecution for an offense under this part, except an offense under section 53a-70b, it shall be an affirmative defense that the defendant and the alleged victim were, at the time of the alleged offense, living together by mutual consent in a relationship of cohabitation, regardless of the legal status of their relationship."

issue. Under General Statutes § 53a-70, a person is guilty of first degree sexual assault, a Class B felony, when he or she compels another through force or the threat of force to engage in sexual intercourse. The definition of "sexual intercourse" excludes persons who are married to each other. General Statutes § 53a-65 (2).[6] It is an affirmative defense to a charge of violating § 53a-70 that the defendant and the alleged victim were "cohabitors" at the time of the assault, whether or not they were legally married. General Statutes § 53a-67 (b).[7] Cohabitation, as defined in our case law, means " 'living together as husband and wife.' " *State* v. *Arroyo*, 181 Conn. 426, 432, 435 A.2d 967 (1980). As an affirmative defense, cohabitation must be established by the defendant by a preponderance of the evidence. General Statutes § 53a-12 (b).[8]

In 1981, the General Assembly enacted legislation specifically proscribing compelled sexual intercourse by a spouse or cohabitor upon the other spouse or cohabitor. Public Acts 1981, No. 81-27, codified at General Statutes § 53a-70b. The alleged assault victim's status as a spouse or cohabitor at the time of the assault is an essential element of § 53a-70b. The statute providing for an affirmative defense of cohabitation was modi-

---

[6] General Statutes § 53a-65 (2) provides: "As used in this part, except section 53a-70b, the following terms have the following meanings . . . .

"(2) 'Sexual intercourse' means vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body. Its meaning is limited to persons not married to each other."

[7] See foonote 5, supra.

[8] "[General Statutes] Sec. 53a-12. DEFENSES; BURDEN OF PROOF. (a) When a defense other than an affirmative defense, is raised at a trial, the state shall have the burden of disproving such defense beyond a reasonable doubt.

"(b) When a defense declared to be an affirmative defense is raised at a trial, the defendant shall have the burden of establishing such defense by a preponderance of the evidence."

fied to exclude the defense to a charge of violating § 53a-70b. See *State* v. *Preyer,* 198 Conn. 190, 196, 502 A.2d 858 (1985). As with § 53a-70, § 53a-70b is a Class B felony.

As we noted in *State* v. *Preyer,* supra, 193–94, "[c]ohabitation is not a defense to a charge of sexual assault under § 53a-70b, but §§ 53a-70 and 53a-70b describe crimes that are statutorily separate and distinct." "While it might have been logical for the legislature, upon enacting § 53a-70b, to amend § 53a-67 (b) to exclude cohabitation as an affirmative defense whenever there is an accusation of sexual assault in the first degree, the legislature chose not to do so." Id., 195–96.

The crux of the defendant's first claim of error is that he should not have been tried for both crimes at the same time. He asserts that by being required to defend against both crimes, he was presented with a "Hobson's choice" of either foregoing his right to present the affirmative defense of cohabitation to the § 53a-70 count, or exercising that right by producing evidence of cohabitation and thereby assisting the state in proving an essential element of the § 53a-70b count. He claims that the state's substitute information, therefore, deprived him of his constitutional right to present a defense or, alternatively, relieved the state of its burden of proving an essential element of a crime. As a consequence, he claims that the trial court erred in denying his motion to have the state elect to prosecute him under one of the two statutes. We are not persuaded.

Ordinarily, the state is not required to elect the count upon which it intends to proceed against a defendant if the joinder of counts in a single information is proper. See *State* v. *Silver,* 139 Conn. 234, 243–44, 93 A.2d 154 (1952) (denying defendant's motion for election between counts charging indecent assault and impair-

ing morals of minor); 42 C.J.S., Indictments and Informations § 187, p. 1152. Under our rules of practice, the state may join two or more offenses in separate counts in a single information. Practice Book § 627.[9] The trial court may exercise its discretion to order severance of the counts or other relief only when a joint trial of the counts will substantially prejudice the defendant's rights. Practice Book §§ 623, 624, 828;[10] *State* v. *Silver,* supra, 240; see also *State* v. *Sebastian,* 81 Conn. 1, 3, 69 A. 1054 (1908) (motion for election is addressed to discretion of trial court); *State* v. *Tuller,* 34 Conn. 280, 298 (1867) (election at trial court's discretion). The accused bears the onerous burden of demonstrating that a denial of severance or other relief resulted in substantial prejudice. *State* v. *Pollitt,* 205 Conn. 61, 67–68, 530 A.2d 155 (1987); *State* v. *King,* 187 Conn. 292, 307, 445 A.2d 901 (1982). Substantial prejudice is not established if the accused demonstrates only that

[9] "[Practice Book] Sec. 627.—JOINDER OF OFFENSES

"Two or more offenses may be charged in the same information in a separate count for each offense for any defendant."

[10] "[Practice Book] Sec. 623.— —SUBSTANTIVE AMENDMENT BEFORE TRIAL

"If the trial has not commenced, the prosecuting authority may amend the information, or add additional counts, or file a substitute information. Upon motion of the defendant, the judicial authority, in his discretion, may strike the amendment or added counts or substitute information, if the trial or the cause would be unduly delayed or the substantitve rights of the defendant would be prejudiced."

"[Practice Book] Sec. 624.— —SUBSTANTIVE AMENDMENT AFTER COMMENCEMENT OF TRIAL

"After commencement of the trial for good cause shown, the judicial authority may permit the prosecuting authority to amend the information or indictment at any time before a verdict or finding if no additional or different offense is charged and no substantive rights of the defendant would be prejudiced. An amendment may charge an additional or different offense with the express consent of the defendant."

"[Practice Book] Sec. 828.—SEVERANCE OF OFFENSES

"If it appears that a defendant is prejudiced by a joinder of offenses, the judicial authority may, upon his own motion or the motion of the defendant, order separate trials of the counts or provide whatever other relief justice may require."

a joint trial of the offenses is less advantageous than separate trials. *State* v. *Pollitt,* supra, 67; *State* v. *Silver,* supra.

In the present case, the joinder of the two counts was permissible. Sections 53a-70 and 53a-70b are distinct and independent offenses. *State* v. *Preyer,* supra, 193–94. "[W]here the elements of two or more distinct offenses are combined in the same act, prosecution for one will not bar prosecution for the other." *State* v. *Chetcuti,* 173 Conn. 165, 169, 377 A.2d 263 (1977). Because Practice Book § 627 broadly authorizes the joinder of "offenses" alleged against any defendant, the joinder of offenses of the same character was permissible.[11]

The first prong of the defendant's claim of prejudice, that the joinder of the two counts deprived him of the right to present a defense, is contrary to fact. The record discloses that the defendant did, in fact, assert the affirmative defense of cohabitation to the § 53a-70 count by testifying that he and the victim considered 735 Dixwell Avenue to be their home. In addition, the trial court submitted the defendant's cohabitation defense to the jury. Further, the jury acquitted the defendant of the § 53a-70 count to which the cohabitation defense applied. Consequently, the defendant did not suffer any prejudice with respect to that count.

The defendant's related claim of prejudice is that in exercising his right to assert the affirmative cohabitation defense to the § 53a-70 count, the state was relieved of its burden of proving all the essential elements of the cohabitating sexual assault charge of

[11] Although the trial court instructed the jury that it could not convict the defendant of both offenses, the state's substitute information charged the defendant with violating both General Statutes §§ 53a-70b and 53a-70. Consequently, the substitute information was not defective for charging the commission of two offenses in the alternative. Cf. *State* v. *Eason,* 192 Conn. 37, 40, 470 A.2d 688 (1984).

§ 53a-70b. In support of this claim, the defendant relies on *In re Winship,* 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970), and *Mullaney* v. *Wilbur,* 421 U.S. 684, 699–700, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975). See also *Patterson* v. *New York,* 432 U.S. 197, 204–205, 97 S. Ct. 2319, 53 L. Ed. 2d 281 (1977); *State* v. *Allen,* 205 Conn. 370, 376, 533 A.2d 559 (1987); *State* v. *Griffin,* 175 Conn. 155, 162, 397 A.2d 89 (1978). These decisions state the fundamental proposition that due process is violated if the burden of persuasion on a fact essential to proof of the crime charged is shifted to the defendant. The defendant's reliance on these cases is inappropriate.

First, the defendant was not compelled to assert the affirmative defense of cohabitation to the § 53a-70 count. In doing so, however, he placed himself in the position of maintaining mutually inconsistent defenses, since he also sought to undermine the state's efforts to prove the cohabitation element of § 53a-70b. Thus, any assistance the defendant rendered the state in its obligation to establish the cohabitation element to the § 53a-70b count arose out of the defendant's choice of a defensive strategy. The "burden shifting" cases on which the defendant relies, by contrast, generally involve instances in which the burden of persuasion is shifted to the defendant as a result of the use of evidentiary presumptions or as a result of trial court instructions to the jury which shift to the defendant the burden of proving particular issues. See, e.g., *Francis* v. *Franklin,* 471 U.S. 307, 316–17, 105 S. Ct. 1965, 85 L. Ed. 2d 344 (1985) (instruction that law presumes that person intends probable consequences of his acts, which may be rebutted, creates mandatory rebuttable presumption that shifted burden of persuasion to defendant that he did not intend to kill victim, thus violating due process); *Sandstrom* v. *Montana,* 442 U.S. 510, 524, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979) (where intent

is element of crime, instruction that law presumes person intends ordinary consequences of act relieves state of its burden of persuasion that defendant had requisite intent beyond reasonable doubt); *Ulster County Court v. Allen,* 442 U.S. 140, 164–66, 99 S. Ct. 2213, 60 L. Ed. 2d 777 (1979) (prosecution may not rest its case on mandatory presumption unless fact proved is sufficient to support inference beyond reasonable doubt; permissive presumption constitutional if there is rational connection between basic and presumed fact); see also *Martin v. Ohio,* 480 U.S. 228, 107 S. Ct. 1098, 1103, 94 L. Ed. 2d 267, reh. denied, 481 U.S. 1024, 107 S. Ct. 1913, 95 L. Ed. 2d 519 (1987) (state may require accused to prove self-defense to homicide charge; federal constitution does not require state to disprove self-defense); *Patterson v. New York,* supra, 210 (due process does not forbid requiring accused to prove affirmative defense by a preponderance of evidence); *Mullaney v. Wilbur,* supra, 703 (statute which places burden of proving provocation on defendant to reduce murder to manslaughter unconstitutionally shifts burden of persuasion to defendant); see generally D. Dripps, "The Constitutional Status of the Reasonable Doubt Rule," 75 Cal. L. Rev. 1665 (1987). We are not persuaded that a defendant's voluntary decision to maintain mutually inconsistent defenses results in a due process violation that would require the state to make an election between the counts to which those defenses apply.

Second, the level of "assistance" that the defendant may have rendered to the state relative to the proof of the cohabitation element of § 53a-70b did not reduce or relieve the state's burden of persuading the jury beyond a reasonable doubt as to that element. In several cases, the United States Supreme Court has indicated that due process does not prohibit the use of presumptions that allow, but do not require, the jury

to infer from a proven fact an element of the crime charged. See, e.g., *Barnes* v. *United States,* 412 U.S. 837, 845–46, 93 S. Ct. 2357, 37 L. Ed. 2d 380 (1973) (upholding constitutionality of statute providing that possession of stolen property, if not adequately explained by defendant, is circumstance from which jury may draw inference that defendant knew property was stolen); *United States* v. *Romano,* 382 U.S. 136, 139, 86 S. Ct. 279, 15 L. Ed. 2d 210 (1965) (standard to determine validity of statutory inference on element of crime is whether there is rational connection between fact proven and fact presumed); *United States* v. *Gainey,* 380 U.S. 63, 66–67, 85 S. Ct. 754, 13 L. Ed. 2d 658 (1965) (standard is whether inference is rational); *Tot* v. *United States,* 319 U.S. 463, 467, 63 S. Ct. 1241, 87 L. Ed. 1519 (1943) (jury may infer presumed fact from basic fact if connection between two facts is rational and if presumption does not shift the burden of proof). Thus, as long as the burden of persuasion is not shifted, a presumption that may strategically require the defendant to produce evidence to negate the inference is permissible. The principles of these cases have been expressly recognized in Connecticut. See, e.g., *State* v. *Truppi,* 182 Conn. 449, 456, 438 A.2d 712 (1980), cert. denied, 451 U.S. 941, 101 S. Ct. 2024, 68 L. Ed. 2d 329 (1981) (entirely permissive inference that allows trier of fact to draw inference constitutional). As we noted in *State* v. *Brown,* 163 Conn. 52, 65, 301 A.2d 547 (1972), "so long as the state sustains its burden of establishing each element of the crime beyond a reasonable doubt, the defendant suffers no unconstitutional handicap by a requirement that he introduce evidence on some point, even an element of the crime." Moreover, in two recent cases, the Court of Appeals for the Fourth Circuit, addressing a question left open by the United States Supreme Court, held that a mandatory presumption that shifts only the bur-

den of production on an element of the crime to the defendant does not violate due process. See *Davis* v. *Allsbrooks,* 778 F.2d 168, 173–74 (4th Cir. 1985) (state may constitutionally shift burden of production to criminal defendant so long as fact presumed is rationally related to fact proven); *Rook* v. *Rice,* 783 F.2d 401, 405 (4th Cir.), cert. denied, 478 U.S. 1022, 106 S. Ct. 3315, 92 L. Ed. 2d 745 (1986) (following *Davis*); see also *Francis* v. *Franklin,* supra, 314 n.3 (whether mandatory presumption that shifts only burden of production consistent with due process not decided).

Applying these principles to the present case, we hold that the state's joinder of the §§ 53a-70 and 53a-70b counts did not shift the burden of proof to the defendant to disprove the cohabitation element of the § 53a-70b count. At most, the defendant's decision to assert the affirmative defense to § 53a-70 may have resulted in the strategic necessity of producing contrary evidence tending to negate the cohabitation element of § 53a-70b. The defendant indicates that he did, in fact, offer contradictory evidence of cohabitation. In addition to his testimony that he and the victim considered 735 Dixwell Avenue their home, the defendant also introduced evidence that he did not stay at the apartment for two nights immediately prior to the alleged assault, that he had not moved all his belongings to the apartment, and that he had asked the victim to move out. Assuming, arguendo, that the defendant's inconsistent position necessarily resulted from the joinder of the offenses, we are not persuaded that the evidence offered to prove the cohabitation defense to the § 53a-70 count relieved the state of proving the cohabitation element of § 53a-70b. During its charge to the jury, the trial court emphasized that the state had to prove beyond a reasonable doubt that the defendant and the victim were cohabitors at the time of the alleged offense. In light of the trial court's

instructions on the state's burden, the jury was free to find, despite the defendant's affirmative defense evidence, that the cohabitation element of § 53a-70b had not been established. Neither the defendant's assertion of the affirmative cohabitation defense nor the trial court's instructions required the jury to infer the establishment of that element.

The defendant's reliance on *State* v. *Ignatowski,* 10 Conn. App. 709, 525 A.2d 542, cert. denied, 204 Conn. 812, 528 A.2d 1157 (1987), to support his claim that the joinder of the §§ 53a-70 and 53a-70b counts substantially prejudiced his right to a fair trial is unpersuasive. In *Ignatowski,* the state filed two informations against the defendant, which were tried together. Id., 712. The first information included one count of cohabiting sexual assault arising from an incident that took place on May 23, 1984. The second information included three counts of noncohabiting sexual assault arising from an incident concerning the same victim on September 18, 1984. Id. Prior to trial, the defendant had disclosed his intent to rely on the affirmative defense of cohabitation to the three § 53a-70 counts in the second information. Id., 716. After the jury had been selected, the state supplemented the second information by adding three counts of cohabiting sexual assault concerning the September 18, 1984 incident. Id., 713.

On appeal, the Appellate Court indicated that the only issue was whether the trial court had erred in allowing the state to add the three cohabiting sexual assault counts to the second information. Id. The court concluded, in light of the state's concession, that the second information was amended at an improper time under Practice Book § 624, and held that the trial court erred in allowing the counts to be added after the trial had commenced. Id., 714. The state argued, however, that the error was harmless because the defendant had been acquitted of the improperly added counts. Id., 715.

The Appellate Court held, first, that the counts added to the second information did not affect the defendant's conviction of the charges in the first information. It stated: "The record indicates that the first information was not amended after the trial had commenced. The defendant, therefore, was provided adequate notice of the charges against him and a proper opportunity to prepare a defense. The improper additions to the second information did not compromise his ability to defend the charges set forth in the first information." Id. With respect to the second information, however, the court held that the error was not harmless. Id., 717. It stated: "[The] improper addition of charges after the trial had commenced, unfairly prejudiced the defendant's ability to present a statutory affirmative defense to the three charges of [noncohabiting] sexual assault . . . . [T]he defendant's affirmative defense to the three charges of [noncohabiting] sexual assault . . . was effectively denied him to his prejudice, resulting in an unfair trial." Id., 716.

The defendant urges that *Ignatowski* holds that the joinder of noncohabiting and cohabiting sexual assault counts in a single information always results in prejudice because it denies the defendant's affirmative defense to the noncohabiting sexual assault count. We disagree. The basis of the Appellate Court's decision in *Ignatowski* clearly turned on the fact that the counts were added *after* the trial had commenced. Id. As noted above, the Appellate Court concluded that the defendant's conviction for the cohabiting sexual assault count in the *first* information was proper because "[t]he defendant . . . was provided with adequate notice of the charges against him and a *proper opportunity to prepare a defense.*" (Emphasis added.) Id., 715. The addition of the counts to the *second* information was prejudicial because the new counts effectively negated the defendant's cohabitation defense after the trial had

commenced and after the defendant had indicated that he intended to rely on that defense. Id., 716. The defendant would have us read *Ignatowski* by ignoring the fact that the counts were added after the trial had commenced. This we decline to do.

In the present case, the noncohabiting sexual assault count was joined to the cohabiting sexual assault count in a substitute information filed on February 4, 1987, prior to the commencement of jury selection and some fourteen days prior to the beginning of the evidentiary phase of the trial. Unlike the defendant in *Ignatowski*, the defendant here, therefore, was not presented with the untimely addition of charges. We conclude that the trial court did not abuse its discretion in denying the defendant's motion for election. *State* v. *Jonas,* 169 Conn. 566, 570, 363 A.2d 1378 (1975), cert. denied, 424 U.S. 923, 96 S. Ct. 1132, 47 L. Ed. 2d 331 (1976).

## II

The defendant's second claim is that the trial court committed error in failing to instruct the jury on the burden of proof relative to the affirmative defense of cohabitation. He also claims that the court's instructions erroneously led the jury to believe that it must convict the defendant of violating either § 53a-70b or § 53a-70 if it found that the defendant had sexually assaulted the victim. We find no reversible error.

Preliminarily, the state maintains that neither claim of error is reviewable. The state points out that the court's charge on the affirmative defense of cohabitation comported with the defendant's request. It also argues that the defendant did not except to either portion of the charge the defendant now claims as error; see Practice Book § 852;[12] and, further, that review

[12] "[Practice Book] Sec. 852. NECESSITY FOR REQUESTS TO CHARGE AND EXCEPTIONS

"The supreme court shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by

under *State* v. *Evans,* 165 Conn. 61, 70, 327 A.2d 576 (1973), is inappropriate because neither claim implicates a fundamental constitutional right. The defendant maintains, however, that the claims of error are reviewable under both *State* v. *Evans* and under the plain error doctrine. See Practice Book § 4185.[13]

We agree with the defendant that the trial court's failure to instruct the jury on the burden of proof of the affirmative cohabitation defense merits review under the plain error doctrine. In *State* v. *Preyer,* supra, 196–97, we held that the trial court had no independent obligation to instruct the jury on the affirmative defense of cohabitation in the absence of a timely request or exception. Implicit in that decision was the conclusion that claims of error pertaining to the inadequacy of instructions on an affirmative defense do not raise a constitutional question. We also held, however, that once the court began to instruct the jury on the affirmative defense of cohabitation, it was obligated to provide correct instructions. Under such circumstances, the defendant's failure to take exception to

a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of objection. Upon request, opportunity shall be given to present the exception out of the hearing of the jury."

[13] "[Practice Book] Sec. 4185. (Formerly Sec. 3063). ERRORS CONSIDERED

"The supreme court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The supreme court may in the interests of justice notice plain error not brought to the attention of the trial court.

"In jury trials, where there is a motion, argument, or offer of proof or evidence in the absence of the jury, whether during trial or before, pertaining to an issue that later arises in the presence of the jury, and counsel has fully complied with the requirements for preserving any objection or exception to the judge's adverse ruling thereon in the absence of the jury, the matter shall be deemed to be distinctly raised at the trial for purposes of this rule without a further objection or exception provided that the grounds for such objection or exception, and the ruling thereon as previously articulated, remain the same."

the charge would not preclude review under the plain error doctrine. Id., 198–99; see Practice Book § 4185. As to the defendant's alternate claim of error, our review of the record, discussed below, indicates that the trial court's instructions did not mislead the jury to believe that the defendant had to be convicted of either the § 53a-70b or the § 53a-70 count.

A

The record discloses that the trial court instructed the jury that cohabitation was a defense to the § 53a-70 count without indicating whether the defendant or the state bore the burden of proof or what level of proof was required to establish or disprove the defense. As noted above, General Statutes § 53a-67 (b) provides that cohabitation is an affirmative defense to a prosecution under § 53a-70. Under General Statutes § 53a-12 (b), the defendant bears the burden of establishing an affirmative defense by a preponderance of the evidence. In *State* v. *Preyer,* supra, 199–200, we noted the "importance of proper instructions on a defense for which there is an evidentiary foundation . . . . [T]he primary purpose of a [jury] charge . . . is 'to assist the jury in applying the law correctly to the facts which they might find established.' " (Citations omitted.) Proper instructions on a defense include an instruction on the burden of proof relative to that defense. Consequently, we conclude that the trial court erred in failing to instruct the jury that the defendant bore the burden of establishing the affirmative defense of cohabitation by a preponderance of the evidence. General Statutes § 53a-12 (b).

"In reviewing [a nonconstitutional] error in jury instructions, our task is to determine whether the asserted error in the trial court's charge to the jury affected the outcome of the trial and, consequently, deprived the defendant of a fair trial. *State* v. *Cooper,*

182 Conn. 207, 212, 438 A.2d 418 (1980)." *State* v. *Quintana*, 209 Conn. 34, 50, 547 A.2d 534 (1988). We conclude that the trial court's failure to charge the jury on the burden of proof on the affirmative defense of cohabitation was harmless error. The court instructed the jury to consider the §§ 53a-70b and 53a-70 counts as follows: "[I]f you find the State has proven all the elements of the [§ 53a-70b] count beyond a reasonable doubt, you must find [the defendant] guilty of sexual assault in a cohabiting relationship. You would necessarily, then find him not guilty of the [§ 53a-70] count to which cohabitation is in the affirmative defense."

The jury is presumed to follow the instructions given by the trial court. *State* v. *Cavros*, 196 Conn. 519, 528, 494 A.2d 550, cert. denied, 474 U.S. 904, 106 S. Ct. 233, 88 L. Ed. 2d 232 (1985). In this case, the jury did not reach the question of cohabitation as an affirmative defense to § 53a-70 because it found the defendant guilty of violating § 53a-70b. Because the defendant was acquitted of the § 53a-70 charge, the court's failure to provide adequate instructions on the cohabitation defense did not affect the outcome of the trial with respect to the § 53a-70 charge. *State* v. *Quintana*, supra, 50.

## B

The defendant's related claim is that the court's charge misled the jury to believe that they must convict the defendant of one of the sexual assault counts if they found that the state had established the alleged sexual assault common to both offenses. He asserts that the trial court should have instructed the jury on the relationship between the different levels of proof of cohabitation applicable to the defendant's affirmative defense to the § 53a-70 count and the state's prosecution of the § 53a-70b count. In failing to instruct the jury on this relationship, the defendant claims that the

court's charge deprived him of a statutory "window" wherein the evidence of cohabitation would be enough to acquit him of the § 53a-70 count but not enough to convict him of the § 53a-70b count. Further, he claims that this error was compounded by specific instructions in which the court misled the jury to believe that it must convict the defendant of either § 53a-70b or § 53a-70. We are not persuaded.

The defendant is correct in asserting that it is possible, under the statutory scheme in issue, for a jury to find that a defendant committed a sexual assault and yet still acquit him of both §§ 53a-70 and 53a-70b on the basis of the victim's fortuitous status as a cohabitor or noncohabitor. A defendant, facing both counts, may establish cohabitation as an affirmative defense by a preponderance of the evidence and therefore be acquitted of the § 53a-70 count. At the same time, the state may fail to prove cohabitation beyond a reasonable doubt, therefore requiring the jury to acquit the defendant of the § 53a-70b count. A level of evidence on cohabitation falling somewhere between "a preponderance of the evidence" and "beyond a reasonable doubt" would entitle the defendant to an acquittal on both counts, regardless of whether the underlying sexual assault had been proven.

The specific instructions to which the defendant objects are as follows: "If you find that the State has proven beyond a reasonable doubt that the defendant compelled [the victim] to engage in sexual intercourse by the use of force against her and you also find that they were cohabitors, you must find him guilty of the [§ 53a-70b] count and not guilty of the [§ 53a-70] count. Conversely, if you find that the defendant compelled [the victim] to engage in sexual intercourse by the use of force against her and you also find that the defendant and [the victim] were not living together by mutual

consent in a relationship of cohabitation, you must find the defendant guilty of the [§ 53a-70] count and not guilty of the [§ 53a-70b] count."

When reviewing claims of error in jury instructions, we read the charge as a whole. Individual instructions are not analyzed in isolation from the overall charge. *State* v. *Smith,* 201 Conn. 659, 668, 519 A.2d 26 (1986). " ' "The issue is whether, in view of the charge read as a whole, that portion of the charge to which objection has been taken can be considered a basis for finding harmful error.". . .' " (Citations omitted.) *State* v. *Taylor,* 196 Conn. 225, 231, 492 A.2d 155 (1985).

In its instructions, the trial court told the jury that it could not convict the defendant of both §§ 53a-70 and 53a-70b. The court instructed the jury that it was first to consider the § 53a-70b count and, if it found the defendant guilty, to acquit him of the § 53a-70 count. If, however, the jury found the defendant not guilty of the § 53a-70b count, it was then to consider the § 53a-70 count. It is clear that the instructions the defendant now objects to were designed to clarify the jury's duty to consider each count in sequence.

Moreover, reading the charge as a whole, it is clear that the trial court instructed the jury that it could sequentially have acquitted the defendant of both charges on the basis of cohabitation. During the portion of the charge instructing the jury to first consider the § 53a-70b count and then, if necessary the § 53a-70 count, the court stated: "[The defendant] can be found not guilty of both of these counts." The defendant's claim that this language was limited to the situation where the jury found that sexual intercourse had not occurred is unsupported by the record.

The defendant does not attack the adequacy of the specific portion of the charge relating to the § 53a-70b count, the count for which he was convicted. The court

instructed the jury: "In order to commit the crime of sexual assault in a cohabiting relationship, the State must prove beyond a reasonable doubt that at the time of the alleged offense, the victim was the defendant's cohabitor. . . . If you find the required sexual intercourse has been proved, you must [also] find that the defendant used force. . . . Thus, if you find that the State has proved beyond a reasonable doubt all of these elements as they have been defined, then you must find the defendant guilty of sexual assault in a cohabiting relationship."

With respect to the § 53a-70 count, the court instructed the jury in a similar fashion. Further, the court stated: "It is a defense to [noncohabiting sexual assault] that the defendant and the alleged victim were, at the time of the alleged offense, living together by mutual consent in a relationship of cohabitation . . . ." Although the court did not refer to the level of proof applicable to the cohabitation defense, the jury was not free to ignore the availability of that defense to the § 53a-70 count. Moreover, the court's failure to assign a burden of proof to the affirmative defense may have operated in the defendant's favor. Had the jury acquitted the defendant of the § 53a-70b count, it would virtually have been compelled to acquit him of the § 53a-70 count since both parties presented evidence of cohabitation. Consequently, the jury was instructed that it could not convict the defendant of violating § 53a-70b unless the state had proven cohabitation beyond a reasonable doubt. Conversely, if the jury had acquitted the defendant of § 53a-70b, the trial court's instructions were clear that the jury could also acquit him of the § 53a-70 count if it had accepted his affirmative defense of cohabitation.

We conclude that the trial court's instructions did not mislead the jury to believe that it must convict the

defendant of either § 53a-70b or § 53a-70 if it found that the state had established the alleged sexual assault common to both offenses.

## III

The defendant next claims that, during its instructions on the first degree kidnapping count, the trial court erroneously included a statutory alternative definition for "abduct" for which there was no evidence. We are not persuaded.

The trial court instructed the jury that "[t]he term abduct means to restrain a person with intent to prevent his liberations by either secreting or holding him in a place where he is not likely to be found or using or threatening to use physical force or intimidation." See General Statutes § 53a-91 (2).[14] The defendant maintains that the field behind Johnnie's Garage could not possibly be construed to be "a place where [one] is not likely to be found." He emphasizes that the victim testified that the assault was interrupted by a motorist who pulled into the garage and shone the car's headlights on the victim and the defendant, and that the victim ran from the field to the street adjoining the garage.

Although the defendant did not file a request to charge on this issue or except to the charge after it was given; Practice Book § 852; he maintains that we should review this claim under *State* v. *Evans,* supra, because it involves his fundamental right not to be convicted on proof less than proof beyond a reasonable doubt. The state, conversely, maintains that *Evans* review is inapplicable because the state's information included

---

[14] General Statutes § 53a-91 (2) provides: " 'Abduct' means to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use physical force or intimidation."

both alternatives and, therefore, the court's instructions on the statutory alternative did not cause the defendant surprise or prejudice.

We agree with the defendant that the question of *Evans* review in this case is controlled by *State* v. *Williams,* 202 Conn. 349, 521 A.2d 150 (1987). In *Williams,* the defendant claimed that the trial court erred in charging the jury on a subsection of a robbery statute for which there was no supporting evidence. Id., 361–62. We stated that " '[a]n accused has a fundamental right, protected by the due process clauses of the federal and Connecticut constitutions, to be acquitted unless proven guilty of each element of the charged offense beyond a reasonable doubt.' " Id., 363. Although the defendant did not preserve the claim for review, we held that "a claim that the judge improperly instructed the jury on an element of an offense is appealable even if not raised at trial." Id. We conclude, therefore, that the defendant's claim in the present case is reviewable under *Evans.*

" '[W]here a person may have been convicted under more than one statutory alternative, the judgment cannot be supported unless the evidence was sufficient to establish guilt under each statutory provision which the trier may have relied upon.' " Id., 363. " 'In determining whether the evidence is sufficient to sustain a verdict, "the issue is whether the jury could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence was sufficient to justify the verdict of guilty beyond a reasonable doubt.". . .' " (Citations omitted.) *State* v. *Reid,* 193 Conn. 646, 666, 480 A.2d 463 (1984).

The defendant does not challenge the sufficiency of the evidence to support a finding of his guilt beyond a reasonable doubt under the statutory definition of the

term "abduct" concerning the use of force or the threat of the use of force. With respect to the alternative ground of "secreting or holding [the victim] in a place where [she] is not likely to be found," we find that the evidence was also sufficient to establish the defendant's guilt beyond a reasonable doubt. The evidence showed that the the field behind the garage was separated from the garage by a fence. The alleged kidnapping took place at night, and the area was not illuminated. Further evidence indicated that the field was something of a refuse area, containing abandoned railroad tracks and an abandoned car. We are unpersuaded by the defendant's selective presentation of the victim's testimony that the field could not be "a place where [one] is not likely to be found." A place in which one is "not likely to be found" does not mean a place where one "cannot be found," nor does it mean a place from which one cannot escape. Consequently, the fact that the victim and the defendant were discovered in the field by a motorist, and that the victim thereafter fled to the street adjoining the garage, does not establish, as a matter of law, that the field behind the garage was not a place where the victim was not likely to be found. We conclude that the trial court did not err in charging the jury on both statutory definitions of abduct.

## IV

Finally, the defendant argues that the trial court instructed the jury on statutory alternatives for establishing various elements of first degree kidnapping without imposing upon the jury the requirement that it unanimously agree on which alternative it had accepted to establish the element. The defendant claims that this omission violated his constitutional right to a unanimous jury verdict.

The defendant did not request a specific unanimity charge on the several elements of kidnapping, nor did

he except to the kidnapping charge after it was given. Consequently, this claim has not been preserved for appellate review in accordance with Practice Book § 852. As our Appellate Court has indicated, however, a defendant's failure to request a specific unanimity charge or to take proper exceptions does not foreclose appellate review since such a claim bears directly on the defendant's right to a unanimous verdict. See, e.g., *State* v. *Benite,* 6 Conn. App. 667, 671, 507 A.2d 478 (1986). Accordingly, because the record discloses that the trial court did not give a specific unanimity charge with respect to the elements of the kidnapping count, we must conduct a more in-depth review of the record to determine whether this omission deprived the defendant of a fundamental constitutional right and a fair trial. *State* v. *Evans,* supra.

The trial court's instructions on the abduction, restraint and intent elements of first degree kidnapping each contained alternative bases for establishing the element. The court instructed the jury that abduction could be accomplished by either "secreting or holding [the victim] in a place where [she] is not likely to be found or using or threatening to use physical force or intimidation." See General Statutes § 53a-91 (2).[15] The court charged that the required restraint could be effected "by moving [the victim] from one place to another or by confining [her] either in the place where the restriction commences or [in] a place [to] which [she] has been moved without consent." See General Statutes § 53a-91 (1).[16] The court instructed that, to satisfy the intent element, the jury must find that the defendant acted "with the intent to inflict physical injury on

[15] See footnote 14, supra.

[16] General Statutes § 53a-91 (1) provides in relevant part: " 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent."

the victim or to violate or abuse [her] sexually." See General Statutes § 53a-92 (a) (2) (A).[17]

Relying on *United States* v. *Gipson,* 553 F.2d 453 (5th Cir. 1977), and *State* v. *Benite,* supra, the defendant claims that because the alternatives for each element were conceptually distinct, the jury may not have agreed on the factual basis for concluding that each element was established. We disagree.

"In essence, the unanimity requirement as enunciated in *Gipson* and its progeny requires the jury to agree on the factual basis of the offense. The rationale underlying the requirement is that a jury cannot be deemed to be unanimous if it applies inconsistent factual conclusions to alternative theories of criminal liability." *State* v. *Bailey,* 209 Conn. 322, 334, 551 A.2d 1206 (1988). " 'Where a trial court charges a jury that the commission of any one of several alternative acts would subject a defendant to criminal liability, a unanimity charge on a specific act is required only if two conditions are met: (1) the alternative acts are *conceptually distinct* from each other; *and* (2) the state has presented *supporting evidence* on each alternative act. *State* v. *Benite,* supra, 674–75.' (Emphasis in original.) [*State* v. *Flynn,* 14 Conn. App. 10, 38, 539 A.2d 1005, cert. denied, U.S. , 109 S. Ct. 226, 102 L. Ed. 2d 217 (1988)]." *State* v. *Bailey,* supra. Alternative bases of liability are not conceptually distinct if " 'the two ways [of committing the crime] are practically indistinguishable.' *Manson* v. *State,* 101 Wis. 2d 413, 430, 304 N.W.2d 729 (1981)." *State* v. *Bailey,* supra.

Applying these principles to the defendant's claims, we first find that the "concealment" and "use of force" alternatives of the abduction element are not meaningfully distinguishable on the facts of the present case. The state's evidence pertaining to the victim's abduc-

[17] See footnote 1, supra.

tion was straightforward. The evidence indicated that the defendant dragged the victim from the house at 735 Dixwell Avenue to Johnnie's Garage next door, and then to the field behind the garage, where he assaulted her. Throughout the episode, the defendant's conduct implicated both "holding [the victim] in a place where [she] is not likely to be found" and "using force." The event was a " 'short continuous incident that cannot be factually separated.' " Id. The jury was not required to extricate from the amalgam of evidence strands of facts unique to each of the alternatives of the abduction element and decide which strand satisfied that element. To require the jury to do so would be to require it " ' "to draw a line finer than that which the human conduct sought to be defined will realistically permit." ' " Id. Moreover, we have previously recognized the abstract conceptual similarity of these two alternatives. "[T]he 'concealment' prong [of abduction] is not so distinct from the other prong of 'using or threatening to use physical force or intimidation' . . . because . . . it is difficult to conceptualize how a kidnapper could conceal a victim without 'using or threatening to use physical force or intimidation.' " *State* v. *Dahlgren,* 200 Conn. 586, 597, 512 A.2d 906 (1986). Although it may be less difficult to conceptualize how a kidnapper could use force without also concealing the victim, this distinction is not present in this case. The evidence indicated that the defendant used force in bringing the victim to a place where she was not likely to be found. Consequently, because the two alternatives as supported by the evidence were not conceptually distinct, the trial court did not err in not giving a specific unanimity charge.

For the same reasons, we also disagree with the defendant's argument that the alternative bases of proving "restraint" were conceptually distinct within the meaning of *Gipson.* Because the jury was not

required to separate an unlawful "movement" from an unlawful "confinement" in the present facts, we conclude that a specific unanimity charge was not required.

Finally, we reject the defendant's claim that a specific unanimity charge was required to distinguish whether the "intent" element had been satisfied by proof of an intent to inflict physical injury upon the victim or to violate or abuse her sexually. The defendant concedes that it is difficult to envisage instances in which an intent "to violate or abuse sexually" does not encompass an intent "to inflict physical injury," but argues that the converse is not true. The theoretical distinction between the two alternatives is not present in the facts of this case. Moreover, we fail to see how the remote possibility that the jurors disagreed on the precise nature of the defendant's intent implicates a lack of unanimity regarding the defendant's conduct. Whether alternative bases of liability are conceptually distinct ordinarily "focus[es] in *Gipson* on *actus reus* components." *Rice* v. *State,* 311 Md. 116, 133, 532 A.2d 1357 (1987). Where, as in the present case, the alternatives of the *mens rea* component give rise to the same criminal culpability, it does not appear critical that the jury may have reached different conclusions regarding the nature of the defendant's intent if such differences do not reflect disagreement on the facts pertaining to the defendant's conduct.

There is no error.

In this opinion the other justices concurred.