STATE OF CONNECTICUT *v.* TONY NIEMEYER
(SC 16232)

McDonald, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.*

* The listing of justices reflects their seniority status on this court as of the date of argument.

Although Chief Justice McDonald reached the mandatory age of retirement before the date that this opinion officially was released, his continued participation on this panel is authorized by General Statutes § 51-198 (c).

Argued November 28, 2000—officially released November 6, 2001

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Mary M. Galvin*, state's attorney, and *Paul Gaetano*, senior assistant state's attorney, for the appellant-appellee (state).

*Pamela S. Nagy*, special public defender, for the appellee-appellant (defendant).

*Opinion*

PALMER, J. This certified appeal requires us to determine whether the Appellate Court properly concluded that the evidence was insufficient to support the conviction of the defendant, Tony Niemeyer, for kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A) and (C),[1] and, if not, whether the trial court's jury instructions on that offense were proper. A jury convicted the defendant of one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (3)[2] and one count of kidnapping in the first

___

[1] General Statutes § 53a-92 (a) provides in relevant part: "A person is guilty of kidnapping in the first degree when he abducts another person and . . . (2) he restrains the person abducted with intent to (A) inflict physical injury upon him or violate or abuse him sexually . . . or (C) terrorize him or a third person . . . ."

General Statutes § 53a-91 defines the terms "restrain" and "abduct" for purposes of § 53a-92. General Statutes § 53a-91 provides in relevant part: "(1) 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. . . .

"(2) 'Abduct' means to restrain a person with intent to prevent his liberation by either (A) secreting or holding him in a place where he is not likely to be found, or (B) using or threatening to use physical force or intimidation. . . ."

[2] General Statutes § 53a-59 (a) provides in relevant part: "A person is guilty of assault in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life he recklessly engages in conduct which creates a risk of death to another person, and thereby causes serious physical injury to another person . . . ."

degree. After the trial court rendered judgment in accordance with the jury verdict,[3] the defendant appealed to the Appellate Court, which affirmed the defendant's assault conviction but reversed his kidnapping conviction on the ground of insufficient evidence.[4] *State* v. *Niemeyer*, 55 Conn. App. 447, 460, 740 A.2d 416 (1999). We granted the state's petition for certification limited to the following issue: "Did the Appellate Court properly conclude that there was insufficient evidence to support a conviction for kidnapping in violation of . . . § 53a-92 (a) (2) (A) and (C)?" *State* v. *Niemeyer*, 252 Conn. 916, 747 A.2d 517 (1999). We also granted the defendant's petition for certification on the following issue: "If the [Appellate Court improperly concluded that there was insufficient evidence to support the defendant's conviction for kidnapping in the first degree], should the trial court have given a specific unanimity charge when the defendant was charged under both . . . [subparagraphs (A) and (C) of] § 53a-92 (a) (2) . . . and the state argued that different evidence satis-

The legislature amended § 53a-59 in 1999. See Public Acts 1999, No. 99-240, § 13. That amendment is not relevant to this appeal. For convenience, we refer to the current revision of § 53a-59.

[3] The trial court sentenced the defendant to a term of imprisonment of fifteen years, execution suspended after ten years, on the assault count, and a consecutive term of imprisonment of ten years, execution suspended after five years, on the kidnapping count, for a total effective term of imprisonment of twenty-five years, execution suspended after fifteen years. The trial court also sentenced the defendant to five years probation.

[4] On appeal to the Appellate Court, the defendant claimed that "the trial court improperly (1) admitted the testimony of the state's expert witness on battered woman's syndrome without a proper foundation, (2) committed plain error by not giving a limiting instruction, sua sponte, as to the expert's testimony, (3) denied his motion for judgment of acquittal as to the kidnapping charge and (4) failed to instruct the jury on the specific intent required for kidnapping in the first degree." *State* v. *Niemeyer*, 55 Conn. App. 447, 448–49, 740 A.2d 416 (1999). The Appellate Court rejected the defendant's first two claims; id., 457; agreed with the defendant's claim of evidentiary insufficiency; id., 460; and did not reach the defendant's claim of instructional impropriety in light of its conclusion that the evidence did not support the jury's verdict of guilty of kidnapping in the first degree. Id.

fied the different subparagraphs?" *State* v. *Niemeyer*, 252 Conn. 917, 744 A.2d 437 (1999). We conclude that, contrary to the determination of the Appellate Court, the evidence was sufficient to support the defendant's kidnapping conviction. We also conclude that the defendant is not entitled to a new trial notwithstanding the trial court's failure to give the unanimity charge. Accordingly, we reverse the judgment of the Appellate Court in part and remand the case to that court with direction to affirm the trial court's judgment as to the defendant's conviction of kidnapping in the first degree.[5]

The opinion of the Appellate Court sets forth the following facts that the jury reasonably could have found. "The defendant shared an apartment in Derby with [the victim], Dawn Siok, and her three children.[6] On February 9, 1996, the defendant left the apartment to go to work on the 3:30 to 11 p.m. shift at Synthetic Products in Stratford. At approximately 11 p.m., [the victim] observed two individuals, known to her as Wayne and Joel,[7] in her backyard. She invited them in and offered them . . . beer. The three then smoked a marijuana cigarette, and Joel left soon after. Shortly after midnight, the defendant returned and met Wayne, who was in the process of leaving.

"The defendant believed that Wayne and [the victim] had been having an affair and demanded to know what Wayne was doing in the apartment. [The victim] started backing into the master bedroom. The defendant [who was six feet, three inches tall and weighed 270 pounds] began hitting [the victim, who was five feet, two inches

---

[5] The defendant's conviction of assault in the first degree is not a subject of this appeal.

[6] The defendant was the victim's boyfriend and the biological father of two of the victim's three children, all of whom were under four years of age when the defendant assaulted the victim.

[7] Wayne and Joel were eighteen and seventeen years old, respectively.

tall and weighed 110 pounds] in the stomach with a closed fist and calling her names.[8] For the next two to three hours, the defendant repeated the cycle of assaulting [the victim], leaving the room for a short time and then returning to assault her again. At approximately 3 a.m., the defendant stopped beating [the victim] and told her to take a shower. [The victim] showered and then went to sleep in her daughters' bedroom.[9]

"[The victim] remained in bed for most of that day. She told the defendant in the morning that she needed to see a doctor and asked him in the afternoon to bring her to a hospital. At approximately 10:30 p.m., the defendant called an ambulance to take [the victim] to a hospital, but only on the condition that she promise not to have him arrested.

"Winston Reed, an emergency room physician, examined [the victim]. He observed bruising on her left arm, and on the upper third of her chest and left ear. [The victim's] eyes were black and blue, and she complained of severe pain in the upper portion of her abdomen. Reed contacted Guy Nicastri, chief surgeon at the hospital, and asked him to examine [the victim]. Nicastri decided to operate and found that [the victim] was bleeding internally from a severed artery to her liver.

"The defendant remained with [the victim] during most of her time at the hospital. A few days after being admitted, however, [the victim] was alone with her mother and sisters and told them that the defendant had assaulted her. On February 15, 1996, [the victim] told the police of the assault, and the defendant was

---

[8] According to the victim, the defendant called her "every name he could possibly think of," including a racially derogatory name stemming from the fact that Wayne is African-American and the victim is Caucasian.

[9] According to the victim, although the defendant had stopped physically assaulting her at this point, he came into the room in which she was staying "every once in awhile" and "sp[a]t in [her] face."

subsequently arrested."[10] *State* v. *Niemeyer*, supra, 55 Conn. App. 449–50.

On appeal, the Appellate Court held that the state had presented insufficient evidence to prove that the defendant had committed kidnapping in the first degree in violation of § 53a-92 (a) (2) (A) and (C). Id., 460. In support of this conclusion, the Appellate Court stated that "there simply was no evidence from which the jury reasonably could infer that he restrained or abducted [the victim]. . . .

"There was no evidence that the defendant restricted [the victim's] movement in any manner. The defendant did not force [the victim] into the master bedroom, tell her to remain there, prevent her from leaving the room or threaten her with violence if she left. [The victim] did not testify that she tried to escape and was prevented from doing so. She did not testify that she was afraid of the defendant and for this reason did not try to escape." Id., 459–60.

On appeal to this court, the state maintains that, contrary to the determination of the Appellate Court, the jury reasonably found that the defendant had restrained and abducted the victim in violation of § 53a-92 (a) (2). The defendant contends otherwise and, in the alternative, claims that: (1) the state failed to prove an intent to terrorize under § 53a-92 (a) (2) (C); and (2) the trial court improperly failed to instruct the jury regarding the necessity of a unanimous verdict on the defendant's guilt under either subparagraph (A) or (C) of § 53a-92 (a) (2). We are persuaded that the evidence was sufficient to support the defendant's kidnapping conviction and reject the defendant's claim of instructional impropriety. We, therefore, conclude that the

---

[10] On several occasions following his arrest, the defendant threatened to harm the victim if she testified against him at trial.

Appellate Court improperly reversed the defendant's kidnapping conviction.

## I

We first address the state's claim that the Appellate Court improperly determined that the evidence presented at trial was insufficient to warrant a finding by the jury that the defendant had abducted and restrained the victim, a finding required for conviction under § 53a-92 (a) (2) (A) or (C). Because we agree with the state, we also consider the defendant's claim that the state failed to establish that the defendant abducted and restrained the victim with the intent to terrorize her as required under § 53a-92 (a) (2) (C). We reject the defendant's claim and, consequently, conclude that the evidence adduced at trial was sufficient to warrant the defendant's conviction of kidnapping in the first degree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 732, 759 A.2d 995 (2000).

"Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . Indeed, direct evidence of the

accused's state of mind is rarely available. . . . Therefore, intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable." (Citation omitted; internal quotation marks omitted.) *State* v. *DeCaro*, 252 Conn. 229, 239–40, 745 A.2d 800 (2000).

"[I]t is a function of the jury to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . Because [t]he only kind of an inference recognized by the law is a reasonable one . . . any such inference cannot be based on possibilities, surmise or conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded upon the evidence. . . . However, [t]he line between permissible inference and impermissible speculation is not always easy to discern. When we infer, we derive a conclusion from proven facts because such considerations as experience, or history, or science have demonstrated that there is a likely correlation between those facts and the conclusion. If that correlation is sufficiently compelling, the inference is reasonable. But if the correlation between the facts and the conclusion is slight, or if a different conclusion is more closely correlated with the facts than the chosen conclusion, the inference is less reasonable. At some point, the link between the facts and the conclusion becomes so tenuous that we call it speculation. When that point is reached is, frankly, a matter of judgment. . . .

"[P]roof of a material fact by inference from circumstantial evidence need not be so conclusive as to

exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . Thus, in determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . In other words, an inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference. Equally well established is our holding that a jury may draw factual inferences on the basis of already inferred facts. . . . Moreover, [i]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence." (Citations omitted; internal quotation marks omitted.) *State* v. *Copas*, 252 Conn. 318, 338–40, 746 A.2d 761 (2000).

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *DeCaro*, supra, 252 Conn. 240. Application of the foregoing principles to the facts adduced at trial leads us to conclude that the evidence was sufficient to support the jury's verdict of guilty of kidnapping in the first degree and, in particular, that the defendant abducted and restrained the victim, and did so with the intent to terrorize her.

To establish the defendant's commission of the crime of kidnapping in the first degree in violation of § 53a-92 (a) (2) (A) or (C); see footnote 1 of this opinion; the state was required to prove that the defendant abducted the victim and restrained her with the intent either to inflict physical injury on her or to terrorize her. Under General Statutes § 53a-91; see footnote 1 of this opinion; " '[r]estrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by . . . confining him . . . in the place where the restriction commences . . . [and] . . . '[a]bduct' means to restrain a person with intent to prevent his liberation by . . . using or threatening to use physical force or intimidation."

On the basis of the evidence, the jury reasonably could have concluded that the defendant intentionally backed the victim into the master bedroom so that he could inflict physical injury upon her. The jury also reasonably could have determined that the defendant's initial attack upon the victim was intended to cause her such pain and fear that she would feel compelled to remain confined to the master bedroom, where he would continue to assault her over a period of several hours. The defendant's repeated physical and verbal abuse of the victim while she lay seriously injured in the master bedroom further supports the conclusion that the defendant intended to cause the victim to be so fearful of him that she would feel compelled to stay in that room to avoid yet another violent confrontation with the defendant, who remained in the apartment with the victim all day. Finally, the fact that the victim left the bedroom only after being ordered to do so by the defendant, who, at that point, had concluded his repeated and vicious physical assault of the victim, demonstrates the extent to which the defendant sought to, and did, exert control over the victim and her move-

ments.[11] The evidence, therefore, was sufficient to permit the jury to find that the defendant forced the victim into the master bedroom and, through repeated physical and verbal abuse and intimidation, frightened her into remaining there for several hours. That is all that was required for the state to prove in the present case that the defendant had restrained and abducted the victim as those terms are defined in § 53a-91 for purposes of § 53a-92 (a) (2).

We acknowledge that the state did not specifically elicit testimony from the victim either that she was afraid of the defendant or that the defendant demanded that she remain in the master bedroom upon threat of serious harm. Moreover, there was no testimony that the victim tried to leave the bedroom and that the defendant physically prevented her from leaving. No such express testimony was necessary, however, to permit the jury reasonably to infer that the defendant, by virtue of his cruel and brutal conduct toward the victim, intended that she remain confined to the master bedroom for fear of what he would do to her if she left without his permission. Indeed, it was reasonable for the jury to have found that the victim would not have remained in the master bedroom for several hours, thereby subjecting herself to the possibility of more physical assaults by the defendant, if she believed that she could have avoided further confrontations simply by leaving the room.[12]

---

[11] The defendant's control over the victim also is reflected in the fact that he refused to aid her in obtaining medical assistance until she agreed to fabricate a story regarding the source of her injuries.

[12] Of course, the issue before us is the sufficiency of the state's proof regarding the intent of the defendant, not the state of mind of the victim. The likely effect of the defendant's conduct on the victim's state of mind is relevant, however, to our determination whether the jury reasonably could have concluded that the defendant's conduct was calculated to cause the victim to remain confined to the master bedroom, not because she wished to stay there but, rather, because she was afraid to leave.

"Kidnapping requires that there be an abduction. Abduction means restraint with the intent to prevent liberation. Whether in a given case the restraint is accompanied by the requisite intent, so as to constitute kidnapping, or is merely incidental to another felony, is ordinarily a question for the jury. . . . Where the requisite intent is present, the fact that the perpetrator's underlying motive for the detention is the consummation of another crime . . . does not preclude a conviction for kidnapping." (Citations omitted.) *State* v. *Lee*, 177 Conn. 335, 343–44, 417 A.2d 354 (1979); see also *State* v. *Vass*, 191 Conn. 604, 614–15, 469 A.2d 767 (1983) ("[t]his court has repeatedly held that if the state proves all of the elements of kidnapping, including the specific intent to restrain, beyond a reasonable doubt, the defendant may be convicted of kidnapping in addition to another felony, even though the two offenses arose out of the same conduct"). We are persuaded that, in light of the totality of the evidence, the jury reasonably concluded that the defendant, through his repeated use of extreme physical force and intimidation, restrained the victim with the intent to prevent her liberation.

We also conclude that the evidence was sufficient to warrant a finding by the jury that the defendant intended to terrorize the victim. "Section 53a-92 (a) (2) (C) criminalizes conduct in which the perpetrator not only abducts an individual, but in addition thereto engages in conduct specifically intended to cause the abductee . . . to experience intense . . . stark fear." (Internal quotation marks omitted.) *State* v. *Dyson*, 238 Conn. 784, 798, 680 A.2d 1306 (1996). The evidence in the present case satisfied this standard. The defendant, who is six feet, three inches tall, and who weighed 270 pounds, inflicted physical injury on the victim that was so severe that she required life-saving surgery. Moreover, he did so repeatedly, returning to the bedroom again and again to continue his attack upon the victim.

It is difficult to imagine a scenario more likely to instill fear and apprehension in a person. Indeed, the victim testified that it seemed as if the assault had lasted "forever," and that she had agreed to the defendant's demand that she not reveal the true source of her injuries because she was "scared . . . [a]fter what [she] just went through" and urgently needed medical attention. Moreover, the defendant called the victim "every name he could possibly think of" and refused to call for medical assistance until nearly twenty-four hours after he had initiated his series of nearly fatal assaults on the victim. This evidence clearly was sufficient to permit a finding by the jury that the defendant intended to terrorize the victim.[13]

## II

The defendant claims that he is entitled to a new trial on the kidnapping charge because the trial court's jury instructions violated his right to a unanimous verdict on that charge.[14] Specifically, the defendant contends that the trial court improperly instructed the jury that its verdict need not be unanimous with respect to whether the defendant abducted and restrained the victim with the intent to inflict physical injury as required by § 53a-92 (a) (2) (A), or with the intent to terrorize

---

[13] Of course, the defendant also sought to cause the victim physical injury. That intent is fully consistent with an intent to terrorize the victim under the facts of this case. See part II of this opinion.

[14] When a nonpetty offense is tried to a six person jury, as in the present case, the sixth and fourteenth amendments to the United States constitution entitle the defendant to a unanimous verdict. *Burch* v. *Louisiana*, 441 U.S. 130, 138, 99 S. Ct. 1623, 60 L. Ed. 2d 96 (1979); *State* v. *Bailey*, 209 Conn. 322, 332, 551 A.2d 1206 (1988); see also Practice Book § 42-29 (requiring unanimous verdict in criminal jury cases). In *Schad* v. *Arizona*, 501 U.S. 624, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991), the United States Supreme Court indicated that an accused's right to a unanimous verdict in regard to the elements of a criminal statute providing alternative means by which the same offense may be committed is "more accurately characterized as a due process right than as one under the Sixth Amendment." Id., 634 n.5.

her as required by § 53a-92 (a) (2) (C).[15] We reject the

[15] The trial court instructed the jury in relevant part: "In order to find the defendant guilty of . . . § 53a-92 (a) (2) (A) . . . the state must prove the following elements beyond a reasonable doubt: one, that the defendant abducted [the victim]; two, that he unlawfully restrained her; and three, that he did so with the intent to inflict physical injury on her. The term 'abduct' means to restrain a person with intent to prevent her liberation by using or threatening to use physical force or intimidation. Abduction need not be proved by establishing the use of force if the proof establishes that the defendant threatened its use in such a manner that the victim reasonably believed that force would be applied to her if she sought to escape or thwart the abductor's intention. The term 'restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with that person's liberty by moving her from one place to another or by confining her either in the place where the restriction commences or in a place to which she has been moved without consent [and] includes but is not limited to deception. Physical injury means impairment of physical condition or pain . . . . It is not necessary that actual physical injury is proven as long as you determine that the defendant intended to inflict the same and abducted and restrained the victim with such intent. Intent relates to the condition of mind of the person who commits the act, in other words, his purpose in doing it. As defined by our statute, a person acts intentionally with respect to a result, or conduct described by a statute defining an offense, when his conscious objective is [to] cause such result or engage in such conduct. What a person's purpose, intention or knowledge has been is usually a matter to be determined by inference. No person is able to testify that he looked into another's mind and saw therein a certain purpose or intention or certain knowledge to do harm to another. The only way in which a jury can ordinarily determine what a person's purpose, intention or knowledge was, at any given time, aside from that person's own statement or testimony, is by determining what that person's conduct was and what the circumstances were surrounding that conduct, and from those, infer what his purpose, intention or knowledge was. Now, in order to find the defendant guilty of . . . [§ 53a-92 (a) (2) (C)], the state must prove the following elements beyond a reasonable doubt: one, that the defendant abducted [the victim]; two, that he unlawfully restrained her; and three, that he did so with the intent to terrorize her. I have already explained to you what is meant by the terms abduct, restrain and intent. To terrorize a person is to engage in conduct which causes such person to experience intense, stark fear. *Now, while you must, of course, be unanimous as to whether the state has proven each of the elements of kidnapping in the first degree beyond a reasonable doubt in order to convict the defendant of this charge, you need not be unanimous with respect to whether he abducted and restrained [the victim] with the intent to inflict physical injury on her or to terrorize her.* Of course, if you find that the state has failed to prove beyond a reasonable doubt any one of such elements, then you

defendant's claim that the challenged instruction entitles him to a new trial.

In a case such as this one, in which the trial court's instructions "can be read to have sanctioned . . . a nonunanimous verdict[16] . . . we will remand for a new trial only if (1) there is a conceptual distinction between the alternative acts with which the defendant has been charged, and (2) the state has presented evidence to support each alternative act with which the defendant has been charged." *State* v. *Famiglietti*, 219 Conn. 605, 619–20, 595 A.2d 306 (1991); accord *State* v. *Dyson*, supra, 238 Conn. 792; *State* v. *Reddick*, 224 Conn. 445, 453, 619 A.2d 453 (1993). "Alternative bases of liability are not conceptually distinct if the two ways [of committing the crime] are practically indistinguishable." (Internal quotation marks omitted.) *State* v. *Suggs*, 209 Conn. 733, 761, 553 A.2d 1110 (1989); accord *State* v. *Smith*, 212 Conn. 593, 605, 563 A.2d 671 (1989). Moreover, our determination whether the instruction constituted harmful error "turns, not only on the language of the two statutory subsections or elements, but also on the evidence in the case and how the case is presented to the jury in the court's instructions." *State* v. *Velez*, 17 Conn. App. 186, 199, 551 A.2d 421 (1988), cert. denied, 210 Conn. 810, 556 A.2d 610, cert. denied, 491 U.S. 906, 109 S. Ct. 3190, 105 L. Ed. 2d 698 (1989).

The two mens rea requirements at issue in the present case, namely, the intent to inflict physical injury; see General Statutes § 53a-92 (a) (2) (A); and the intent to

---

must find the defendant not guilty as to the second count of the information." (Emphasis added.)

[16] "In essence, the unanimity requirement . . . requires the jury to agree on the factual basis of the offense. The rationale underlying the requirement is that a jury cannot be deemed to be unanimous if it applies inconsistent factual conclusions to alternative theories of criminal liability." (Internal quotation marks omitted.) *State* v. *Suggs*, 209 Conn. 733, 761, 553 A.2d 1110 (1989), quoting *State* v. *Bailey*, 209 Conn. 322, 334, 551 A.2d 1206 (1988).

terrorize; see General Statutes § 53a-92 (a) (2) (C); can involve two different and conceptually distinct mental states. For example, one easily can conceive of circumstances in which an accused abducts and restrains a person intending to cause that person great fear and anxiety without also intending any accompanying physical harm or injury. Indeed, it also is possible for a person to intend to inflict physical injury on another person without also intending to terrorize that person. The question, however, is not whether hypothetical scenarios exist in which the two statutory subparagraphs are conceptually distinct but, rather, whether that conceptual distinction is meaningful in the context of this case.

We conclude that there is no such distinction under the facts of this case. The evidence established that the defendant taunted and assaulted the victim for a protracted period, causing her both serious physical injury and great fear. In such circumstances, it borders on the preposterous to think that a jury could have believed that the defendant intended to cause the victim *either* serious physical injury *or* terror *but not both*.

The defendant claims that the trial court's instruction was harmful because the state relied on different evidence to prove a violation of each of the two statutory subparagraphs. In support of this contention, the defendant relies on the fact that the prosecutor, during closing arguments, referred to the defendant's refusal to obtain medical assistance for the victim as a basis for the jury to find that the defendant intended to terrorize her. The defendant claims that, because this conduct occurred after the defendant had finished inflicting physical injury on the victim, the evidence establishing the defendant's intent to *inflict physical injury* and the evidence establishing his intent to *terrorize* were different, thereby giving rise to the possibility of a nonunanimous verdict.

We are not persuaded by this argument. There is nothing in the prosecutor's argument or in the trial court's instructions to suggest that the jury was not free to consider all of the evidence adduced at trial in evaluating the defendant's culpability under the two statutory subparagraphs. Moreover, the jury, by virtue of its guilty verdict on the charge of assault in the first degree, found that, on the basis of the evidence proffered by the state, the defendant intentionally and brutally beat the victim over a prolonged period of time. As we have indicated, it is virtually inconceivable, on the basis of that evidence alone, for the jury possibly to have reached a conclusion other than that the defendant also intended to terrorize the victim. Thus, the fact that the jury may have considered the defendant's postassault conduct in assessing the defendant's intent does not undermine the conclusion that the two statutory subparagraphs are conceptually indistinct in the circumstances of this case.

Furthermore, "we fail to see how the remote possibility that the jurors disagreed on the precise nature of the defendant's intent implicates a lack of unanimity regarding the defendant's conduct. Whether alternative bases of liability are conceptually distinct ordinarily focus[es] . . . on actus reus components. . . . Where, as in the present case, the alternatives of the mens rea component give rise to the same criminal culpability, it does not appear critical that the jury [theoretically] may have reached different conclusions regarding the nature of the defendant's intent if such differences do not reflect disagreement on the facts pertaining to the defendant's conduct." (Citation omitted; internal quotation marks omitted.) *State* v. *Suggs*, supra, 209 Conn. 763.

The judgment of the Appellate Court is reversed in part and the case is remanded to that court with direction to affirm the trial court's judgment of conviction

of kidnapping in the first degree. The judgment of the Appellate Court is affirmed in all other respects.

In this opinion BORDEN, KATZ and VERTEFEUILLE, Js., concurred.

MCDONALD, C. J., concurring. Although I agree with the majority that the conviction of the defendant, Tony Niemeyer, for kidnapping in the first degree should be upheld, I write separately to express the view that the kidnapping statute; General Statutes § 53a-92; with its severe penalties should apply only "to true kidnapping situations and not . . . apply . . . to crimes which are essentially robbery, rape or assault and in which some confinement or asportation occurs as a subsidiary incident." *People* v. *Lombardi,* 20 N.Y.2d 266, 270, 229 N.E.2d 206, 282 N.Y.S.2d 519 (1967). In *Lombardi,* the New York Court of Appeals had before it New York's kidnapping statute; N.Y. Penal Law § 135.25; upon which our kidnapping statute was modeled.

In *People* v. *Gonzalez,* 80 N.Y.2d 146, 153, 603 N.E.2d 938, 589 N.Y.S.2d 833 (1992), that court later said "[t]he guiding principle is whether the restraint was so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them." (Internal quotation marks omitted.) Where the abduction and the underlying crime are not discrete but simultaneous and there is a minimal asportation immediately preceding another offense, the abduction should not be considered a kidnapping. Where, however, the manner of abduction is egregious, the New York Court of Appeals concluded that, regardless of other circumstances, a kidnapping does occur. Id.

The evidence in this case was that the defendant walked toward the victim in a threatening manner, and she retreated into her bedroom. The defendant followed

her into that room and beat her over a period of two to three hours, bruising her, blackening her eyes and severing an artery to her liver. While doing so, he continued to berate her in a jealous rage and spit in her face. Like the victim in *Gonzalez*, the victim here was "subjected to a prolonged episode of unremitting terror and physical brutality." (Internal quotation marks omitted.) Id. I would conclude that the evidence of restraint supports the conviction for kidnapping. The jury could find that restraint was not "merely incidental" to the assault. *State* v. *Lee*, 177 Conn. 335, 343, 417 A.2d 354 (1979).