# STATE OF CONNECTICUT *v.* ERNESTO P.[1]
## (AC 32825)

DiPentima, C. J., and Gruendel and West, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued February 1—officially released May 1, 2012

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Mitchell S. Brody*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *John F. Fahey*, senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Ernesto P., appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree by the threat of use of force in violation of General Statutes § 53a-70 (a) (1), one count of sexual assault in the first degree by intercourse with a victim under the age of thirteen in violation of General Statutes § 53a-70 (a) (2), one count of sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (B), one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), one count of risk of injury to a child in violation of § 53-21 (a) (2), one count

of possession of child pornography in the third degree in violation of General Statutes § 53a-196f (a), and one count of employing a minor in an obscene performance in violation of General Statutes § 53a-196a (a) (1). On appeal, the defendant claims that the evidence was insufficient to establish that he (1) threatened the use of force and (2) employed a minor in an obscene performance. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. In the late summer of 2006, the victim was eleven years old.[2] The victim resided in Hartford near the home of C, who lived with her father, the defendant.[3] The victim and C were close friends in the fifth grade. They played often, spending considerable time together. On one particular day, the victim stopped by C's home on her way to a park to play with other friends. At that time, C asked the defendant if she could spend the night at the victim's house. The defendant answered affirmatively, on the condition that C first cleaned her room. As C proceeded to her room, the defendant asked if he could have a moment with the victim, who waited in the kitchen. The defendant then approached the victim and touched her breasts and vaginal area outside her clothing. As he did so, he warned the victim that if she told anyone of the encounter "something bad would happen to [her]" and also that his daughter "would never talk to [her] and [they] would never be

[2] In his appellate brief, the defendant states that he "has consistently maintained his innocence in this case." Nevertheless, in this appeal he does not challenge the judgment of conviction with respect to his commission of the crimes of sexual assault in the first degree by intercourse with a victim under the age of thirteen in violation of § 53a-70 (a) (2), possession of child pornography in violation of § 53a-196f (a), and risk of injury to a child in violation of both § 53-21 (a) (1) and (2). In light of the foregoing and in furtherance of our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child; see footnote 1 of this opinion; we refer to the victim by that nomenclature in this opinion.

[3] The defendant separated from C's mother in October, 1997.

best friends no more." C returned from her bedroom and observed the defendant "humping" the victim. She testified that the victim at that time looked uncomfortable and sad. C yelled at her father, stating that what he was doing to her best friend was wrong. The defendant responded by explaining to C that the victim simply was "showing him what she had did to her boyfriend." C replied that she knew that he was lying because the victim did not have a boyfriend and would not engage in such behavior. The girls then left the defendant's property and headed to the victim's home, where they contacted the police. When the police responded, C falsely denied witnessing anything between the defendant and the victim because she "was scared of what was gonna happen if I told. . . . I thought I was gonna to get hurt or something. . . . By [the defendant]." C testified that "every time I get in trouble [the defendant] would . . . pick up a wire or hit me with a stick or something." Although the defendant was arrested, he later was released. As a result of that encounter, the victim refrained from entering the defendant's home and instead always waited in the backyard for C to come out and play. The victim testified that she did so because she was afraid of the defendant.

Approximately two months after the encounter with the defendant, the victim entered the defendant's home with C when he was not present. On that occasion, the defendant returned home while the girls were inside the residence and ordered C to take a shower. The victim at that point wanted to leave, but did not do so. As C showered, the defendant approached the victim and took naked photographs of her. He then sodomized the victim. The defendant stopped when C finished her shower and he instructed the victim to pull up her clothes. At trial, the victim testified that the sexual assault felt "[n]asty." The victim did not contact the police after that assault because she did not believe

that the police would take any action when "they didn't believe" her initial report weeks earlier.

Approximately two years later, while speaking with personnel from the department of children and families on an unrelated matter, C informed them that the defendant had "touched" the victim, which prompted an investigation. Stacey Karpowitz, a forensic interview specialist at the Aetna Children's Foundation, subsequently met with the victim on October 27, 2008, and questioned her about the allegations of sexual assault, which interview was monitored by members of the Hartford police department. During that interview, the victim stated that the defendant had touched her breasts and vaginal area, had taken pornographic photographs of her and had sodomized her. The police thereafter executed a search warrant on the defendant's home, where they found and seized twenty-six photographs of various females under a stack of pornographic magazines in a kitchen cabinet. Eleven of the photographs are of a young female exposing her naked breasts, buttocks, vagina and anus. At trial, the victim identified herself as the female in those photographs.

The defendant thereafter was arrested and taken to police headquarters, where he signed a waiver of his *Miranda* rights.[4] Detective Edward P. Foster testified at trial that the defendant at that time stated, "I'm guilty. I'm guilty. Only guilty people sign papers." The defendant also identified the victim as the nude female in several of the seized photographs. He denied ever touching the victim in a sexual manner and explained that the victim "was enamored [with] him and that on repeated occasions she had shown up at his door naked . . . [b]egging him to teach her about sex." He further stated that he believed that his daughter and the victim

---

[4] See *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

were engaged in a lesbian relationship. When asked about the identity of other females in the seized photographs, the defendant replied, "[H]ow much time am I gonna do in jail, five years? It's gonna take you ten years to figure out who those girls are."

The defendant was charged by information with the aforementioned offenses. A trial followed, at the conclusion of which the jury found the defendant guilty on all counts. The court rendered judgment accordingly[5] and sentenced the defendant to a total effective term of twenty years incarceration and five years of special parole. From that judgment, the defendant now appeals.

I

The defendant claims that the evidence adduced at trial was insufficient to establish that he threatened the victim with the use of force. He preserved this claim by moving for a judgment of acquittal on that basis as to the charge of sexual assault in the first degree in violation of § 53a-70 (a) (1),[6] which pertained to the act of sodomy, and the charge of sexual assault in the third degree in violation of § 53a-72a (a) (1) (B),[7] which

---

[5] The court merged the defendant's conviction of two counts of sexual assault in the first degree in violation of § 53a-70.

[6] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by . . . the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ."

General Statutes § 53a-65 (2) defines "sexual intercourse," as that term is used in § 53a-70 (a) (1), as "vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Its meaning is limited to persons not married to each other. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body."

[7] General Statutes § 53a-72a (a) provides in relevant part that "[a] person is guilty of sexual assault in the third degree when such person (1) compels another person to submit to sexual contact . . . (B) by the threat of use of force against such other person or against a third person, which reasonably

pertained to the touching of the victim's breasts and vaginal area as he "humped" the victim.

Our standard of review for claims of evidential insufficiency is well established. "[W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . [A reviewing court] cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . Furthermore, [i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable. . . .

causes such other person to fear physical injury to himself or herself or a third person . . . ."

General Statutes § 53a-65 (3) defines "sexual contact," as that term is used in § 53a-72a (a) (1), as "any contact with the intimate parts of a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor with a person not married to the actor for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person." Likewise, General Statutes § 53a-65 (8) defines "intimate parts" as "the genital area or any substance emitted therefrom, groin, anus or any substance emitted therefrom, inner thighs, buttocks or breasts." Although § 53a-65 (8) was amended by Public Acts 2006, No. 06-11, § 1, that amendment has no bearing on the merits of this appeal. For convenience, we refer to the current revision of the statute.

"[I]t is a function of the jury to draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . . Because [t]he only kind of an inference recognized by the law is a reasonable one . . . any such inference cannot be based on possibilities, surmise or conjecture. . . . It is axiomatic, therefore, that [a]ny [inference] drawn must be rational and founded upon the evidence. . . . [P]roof of a material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . Thus, in determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . In other words, an inference need not be compelled by the evidence; rather, the evidence need only be reasonably susceptible of such an inference. Equally well established is our holding that a jury may draw factual inferences on the basis of already inferred facts. . . . Moreover, [i]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citations omitted; internal

quotation marks omitted.) *State* v. *Niemeyer*, 258 Conn. 510, 517–19, 782 A.2d 658 (2001).

In the present case, there is a reasonable view of the evidence that supports the jury's finding that the defendant threatened the use of force while perpetrating the crimes of sexual assault in the first degree and sexual assault in the third degree. The jury heard testimony from the victim that the defendant threatened that "something bad would happen to [her]" if she ever told anyone of their initial sexual encounter. The jury, as sole arbiter of credibility, was free to believe that testimony. See *State* v. *Russell*, 101 Conn. App. 298, 316, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007).

Significantly, the jury also heard testimony that the defendant articulated that threat as the initial physical assault transpired—as he touched the intimate parts of the victim. Because "[p]hysical injury is both a serious and foreseeable risk in the ordinary course of such [sexual] encounters"; *United States* v. *Daye*, 571 F.3d 225, 231 (2d Cir. 2009); the jury reasonably could infer that the defendant's verbal threat, uttered as he "humped" the victim,[8] communicated a threat of physical force to the victim. The jury likewise could reasonably infer that the defendant, a fifty-four year old adult male, was stronger than the eleven year old victim. See *State* v. *Glasper*, 81 Conn. App. 367, 375, 840 A.2d 48 (in considering evidence jury not required to leave common sense at courtroom door), cert. denied, 268 Conn. 913,

[8] To "hump" is slang for "to have sexual intercourse with." Random House Webster's Unabridged Dictionary (2d Ed. 2001) p. 932; see also Webster's Third New International Dictionary (2002) p. 1102 (defining "hump" as "to copulate with"). Considered in tandem with the victim's testimony that the defendant was touching her breasts and vaginal area outside her clothing, the jury reasonably could infer that when C testified that she witnessed the defendant "humping" the victim, she meant that he held her in a sexual embrace.

845 A.2d 415 (2004). Our appellate courts "have consistently held that one also may be guilty of sexual assault in the first degree if one uses one's physical size or strength to threaten another to submit to sexual intercourse and that such threat may be expressed or *implied*." (Emphasis in original.) *State* v. *Mahon*, 97 Conn. App. 503, 512, 905 A.2d 678, cert. denied, 280 Conn. 930, 909 A.2d 958 (2006); see also *State* v. *Kulmac*, 230 Conn. 43, 76, 644 A.2d 887 (1994) (defendant's use of "superior physical size and strength, or an implied threat thereof, to compel [the victim] to engage in intercourse" sufficient to sustain conviction of sexual assault in first degree).

Moreover, the jury also heard the victim testify that, after her initial physical assault by the defendant— during which he warned her that "something bad would happen to [her]" if she reported the assault—she feared the defendant.[9] In light of that fear, the jury rationally could infer from the evidence before it that, as the defendant penetrated her anus with his penis during the second sexual assault, the eleven year old victim was mindful of his earlier threat, which communicated an implicit threat of the use of force.

As one federal court observed, "crimes involving indecent sexual contact with a child typically occur in close quarters, and are generally perpetrated by an adult upon a victim who is not only smaller, weaker, and less experienced, but is also generally susceptible to

---

[9] The defendant argues that given his other threat that his daughter "would never talk to [the victim] and [they] would never be best friends no more," the evidence plausibly suggests that the victim merely feared a social loss. That contention is undercut by C's testimony at trial that, upon witnessing the sexual assault, C immediately yelled at the defendant, called him a liar and thereafter maintained her friendship with the victim. We note further that, in evaluating a sufficiency of the evidence claim, we do not view the evidence in a light most favorable to a convicted defendant, but rather in one most favorable to sustaining the verdict of guilty. *State* v. *Niemeyer*, supra, 258 Conn. 519.

acceding to the coercive power of adult authority figures." (Internal quotation marks omitted.) *United States* v. *Cadieux*, 500 F.3d 37, 45 (1st Cir. 2007), cert. denied, 552 U.S. 1190, 128 S. Ct. 1226, 170 L. Ed. 2d 77 (2008); accord *United States* v. *Velazquez-Overa*, 100 F.3d 418, 422 (5th Cir. 1996) ("[a] child has very few, if any, resources to deter the use of physical force by an adult intent on touching the child"), cert. denied, 520 U.S. 1133, 117 S. Ct. 1283, 137 L. Ed. 2d 359 (1997). In light of the foregoing and viewing the evidence in the light most favorable to sustaining the verdict, we conclude that the jury reasonably could have inferred that the defendant used the threat of force to compel the victim to submit to both the initial sexual contact and the subsequent act of anal intercourse two months later.

## II

The defendant also argues that the evidence was insufficient to establish that he employed a minor in an obscene performance. His claim is twofold in nature. The defendant first posits that § 53a-196a (a) (1) contains a public distribution element, contending that "[a]dults who take obscene images of minors solely for their own use" cannot be prosecuted under that statute. On that interpretation of § 53a-196a (a) (1), the defendant reasons that because no evidence was submitted indicating that the defendant distributed the obscene photographs of the victim seized in the search of his residence, his conviction of that crime cannot stand. We disagree.

## A

We first consider the defendant's novel interpretation of § 53a-196a (a) (1), over which, as a question of statutory interpretation, our review is plenary. See *State* v. *Johnson*, 301 Conn. 630, 649, 26 A.3d 59 (2011). "The principles that govern statutory construction are well

established. When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes." (Internal quotation marks omitted.) *State* v. *Rodriguez-Roman*, 297 Conn. 66, 74, 3 A.3d 783 (2010).

Section 53a-196a (a) provides that "[a] person is guilty of employing a minor in an obscene performance when such person (1) employs any minor, whether or not such minor receives any consideration, for the purpose of promoting any material or performance which is obscene as to minors, notwithstanding that such material or performance is intended for an adult audience . . . ."[10] The defendant claims that "a photographer who takes pictures for personal use, with no intent to distribute, is not an 'audience' within the meaning" of the statute. By contrast, the state maintains that an audience, as that term is used in § 53a-196a (a) (1), can be a single individual such as the defendant. Because both interpretations are plausible, the statute is ambiguous; *State* v. *Johnson*, supra, 301 Conn. 650; particularly when, unlike other terms used in § 53a-196 (a) (1), the term "audience" is not specifically defined by statute. In seeking to ascertain and give effect to the apparent intent of the legislature, we therefore may "look for

[10] We note that technical changes were made to subsection (a) of § 53a-196a since the time of the defendant's conduct at issue in this appeal. See Public Acts 2007, No. 07-143, § 6. Because those changes have no bearing on the merits of this appeal, for clarity and convenience, we refer to the current revision of the statute.

interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *State* v. *Rodriguez-Roman*, supra, 297 Conn. 75.

We begin by noting that § 53a-196a (a) (1) is part of the statutory scheme governing obscenity related offenses. That scheme includes, inter alia, offenses relating to the promotion of obscene materials to minors; General Statutes § 53a-196; the employment of minors in obscene performances; General Statutes § 53a-196a; the importation of child pornography; General Statutes § 53a-196c; and the possession of child pornography. General Statutes § 53a-196d et seq. The goal underlying that legislative scheme, as noted by our Supreme Court in *State* v. *Ehlers*, 252 Conn. 579, 595 n.19, 750 A.2d 1079 (2000), is "to prohibit the exhibition and viewing of children engaged in sexual conduct, regardless of the number of spectators or whether the spectators are depicted in any reproduction."

To that end, § 53a-196a (a) (1) prohibits a person from employing a minor "for the purpose of promoting any material or performance which is obscene as to minors . . . ." A performance "obscene to minors" is defined in General Statutes § 53a-193 (2) as one that "depicts a prohibited sexual act and, taken as a whole, it is harmful to minors. . . ." Section 53a-193 (3) defines "prohibited sexual act" as, inter alia, a "nude performance . . . ." Nude performances in turn are defined as "the showing of the human male or female genitals, pubic area or buttocks with less than a fully opaque covering, or the showing of the female breast with less than a fully opaque covering of any portion thereof below the top of the nipple, or the depiction of covered

male genitals in a discernibly turgid state in any play, motion picture, dance or other exhibition performed before an audience." General Statutes § 53a-193 (4). It is undisputed that the photographs of the victim seized during the search of the defendant's residence contain exhibitions of her genitals, pubic area, buttocks and breasts. The defendant nevertheless insists that the retention of such photographs by a photographer for his own personal use cannot constitute an audience for purposes of the offense of employing a minor in an obscene performance.

For two reasons, we disagree with that proposition. First and foremost, it runs counter to the legislative policy of prohibiting the exhibition and viewing of children engaged in sexual conduct. *State* v. *Ehlers*, supra, 252 Conn. 595 n.19. Second, we are mindful of the well established canon of statutory construction that "[a]n identical term used in [statutory provisions] pertaining to the same subject matter should not be read to have differing meanings unless there is some indication from the legislature that it intended such a result." (Internal quotation marks omitted.) *State* v. *Reynolds*, 264 Conn. 1, 78, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004). In *State* v. *Ehlers*, supra, 595, our Supreme Court expressly considered the meaning of the term "audience" as used in § 53a-196d, the possession of child pornography in the first degree statute. It explained that a performance held before an audience "means that there must be some recording or viewing of, or listening to, a live performance, or a reproduction of a live performance, by a person or persons other than the person or persons simultaneously engaged in the performance. The number of such persons recording, viewing or listening to the performance and whether they actually are present at the live performance or depicted in reproductions

of it are irrelevant for purposes of determining whether an audience exists. Thus, an audience . . . could consist of a single photographer of the live performance, whether or not he or she actually was present at the performance or ever viewed the photographs, or a single person viewing photographs of the performance, whether or not any spectator was present at the live performance or depicted in the photographs."[11] Id., 595–96. It further indicated that "if a person engaged in the performance himself records the performance, or views or listens to material depicting a reproduction of a performance in which he participated, he will constitute an audience . . . ." Id., 595 n.18. Our Supreme Court articulated an identical reasoning in rejecting a similar claim regarding § 53a-196c, the importation of child pornography statute, in *State* v. *Sorabella*, 277 Conn. 155, 188–89, 891 A.2d 897, cert. denied, 549 U.S. 821, 127 S. Ct. 131, 166 L. Ed. 2d 36 (2006).[12]

There is no indication that the legislature intended the term "audience," as it is used in § 53a-196a, to have a different meaning from that utilized in §§ 53a-196c and 53a-196d. The defendant disagrees, arguing that recent legislation targeting the practice known as "sexting"[13] demonstrates a legislative understanding that § 53a-196a contains a public dimension component. He claims that, in enacting General Statutes § 53a-196h (a)

[11] Like the defendant in the present case, the defendant in *Ehlers* relied on the dictionary definition of "audience" to support his proposition that the term meant multiple spectators. *State* v. *Ehlers*, supra, 252 Conn. 592.

[12] In *Sorabella*, our Supreme Court declined "the defendant's invitation" to "overrule *Ehlers* insofar as we held that self-recording may be deemed to satisfy the audience requirement of the statute." *State* v. *Sorabella*, supra, 277 Conn. 189 n.39. Rather, the court adhered "to the reasons for our conclusion in *Ehlers* regarding the audience requirement . . . ." (Citation omitted.) Id.

[13] "Sexting" is the act of sending sexually explicit messages or photographs between mobile telephones. See *United States* v. *Broxmeyer*, 616 F.3d 120, 123 (2d Cir. 2010).

(2),[14] which proscribes the knowing and voluntary transmission by means of an electronic communication device a visual depiction of child pornography by a minor, the legislature intended that misdemeanor; General Statutes § 53a-196h (c); to be the exclusive punishment for such conduct. He thus alleges that interpreting " 'audience' as including a photographer creating an image for personal use [in § 53a-196a (a) (1)] creates felony liability for minors who take obscene photographs of each other or encourage each other to take photographs of themselves for personal use," thereby contravening the legislative intent to make § 53a-196h (a) (2) the exclusive punishment for such conduct. His claim fails to appreciate the fact that the act of transmitting "by means of an electronic communication device a visual depiction of child pornography . . . to another person"; General Statutes § 53a-196h (a) (2); necessarily is imbued with a public dimension, as the "visual depiction" is viewed by an audience of more than one spectator. Furthermore, the legislative history of that statute does not indicate that § 53a-196h (a) (2) was intended to be the exclusive punishment for such conduct. Rather, it substantiates the state's assertion that the statute serves as a statutory alternative to § 53a-196a, affording a degree of discretion to law enforcement. See 53 H.R. Proc., Pt. 11, 2010 Sess., p. 3499, remarks of Representative Michael P. Lawlor (noting that a "number of people thought that maybe it would be a good idea to give the police another option"). The defendant's contention, therefore, is without merit.

Applying the principle that "a word used in different parts of the same statutory scheme has the same meaning"; State v. Rivera, 250 Conn. 188, 201, 736 A.2d 790

---

[14] General Statutes § 53a-196h (a) (2) provides: "No person who is thirteen years of age or older but under sixteen years of age may knowingly and voluntarily transmit by means of an electronic communication device a visual depiction of child pornography in which such person is the subject of such visual depiction to another person who is thirteen years of age or older but under eighteen years of age."

(1999); we conclude that the term audience, as used in § 53a-196a, may consist of a single photographer of the live performance or a single person viewing photographs of the performance, whether or not any spectator was present at the performance or depicted in the photographs. To paraphrase *Ehlers*, this commonsense interpretation of § 53a-196a (a) (1) advances the legislative purpose of "prohibit[ing] the exhibition and viewing of children engaged in sexual conduct, regardless of the number of spectators . . . ." *State* v. *Ehlers*, supra, 252 Conn. 595 n.19.

Moreover, adopting the defendant's interpretation of the statute to exempt "[a]dults who take obscene images of minors solely for their own use" would lead to a most bizarre result, as it would condone the exhibition of children engaged in sexual conduct, so long as such exhibition was limited to what the defendant characterizes as the photographer's "personal use." The legislature could not have intended such a result. See *State* v. *Sandoval*, 263 Conn. 524, 553, 821 A.2d 247 (2003) ("we interpret statutes to avoid bizarre or nonsensical results"); *State* v. *Spears*, 234 Conn. 78, 92, 662 A.2d 80 ("[w]e must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve" [internal quotation marks omitted]), cert. denied, 516 U.S. 1009, 116 S. Ct. 565, 133 L. Ed. 2d 490 (1995).

B

In light of our conclusion that the term audience, as used in § 53a-196a, may consist of a single photographer of the live performance or a single person viewing photographs of the performance, the defendant's evidential insufficiency claim is untenable. The record demonstrates—and the defendant in this appeal does not dispute—that the jury had before it evidence from which it reasonably could determine that he photographed the

victim's nude performance, which was memorialized in the obscene photographs found in his residence. The jury further could reasonably conclude that the victim engaged in that performance at the behest of the defendant. Accordingly, the defendant's claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.